ALTON & SOUTHERN RAILWAY COMPANY, Plaintiff-Appellant, *v.* ALTON TRANSPORTATION COMPANY *et al.*, Defendants-Appellees.

Fifth District   No. 79-242

Opinion filed December 7, 1979.—Rehearing denied January 24, 1980.

Walker and Williams, P. C., of Belleville (David B. Stutsman and James C. Cook, of counsel), for appellant.

Fritz G. Faerber, of Alton (Lucas & Murphy, of St. Louis, Missouri, of counsel), for appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Alton & Southern Railway Company, appeals from a judgment in its favor in the amount of $31,993 entered March 26, 1979, by the circuit court of St. Clair County after a bench trial. At issue is the proper measure of damages sustained at Alton & Southern's dock facilities known as the Fox Terminal. The plaintiff seeks a determination that the court below awarded inadequate compensation in the light of evidence presented at trial. Defendants cross-appeal, charging error insofar as the trial court held them in any way responsible for the damages incurred. Barring such a finding, they contend that the award was excessive because it was not calculated so as to include the factor of depreciation. We affirm the judgment of the circuit court but modify the award of damages.

The Alton & Southern Railway Company began this litigation on April 5, 1974. The complaint alleged that due to the defendants' negligence barges under their control (known as the Monsanto Fleet) had broken loose and floated downstream. These were said to have collided with the Alton & Southern facility located at Mississippi River Mile 176.4 at Cahokia in St. Clair County. It was admitted by the defendant, Notre Dame Fleeting & Towing Service, Inc., that 32 barges did break away in the early morning hours of January 12, 1973, and that significant numbers had broken away on the day previous. River conditions during this period were hazardous due to heavy concentrations of floating ice coming from the Missouri River and from ice flushing operations upstream at the Alton, Illinois Lock and Dam No. 26. The defendants were well aware of the approaching ice and the danger of breakaways under the circumstances.

The Fox Terminal is composed of two docks and it is the older of the two which was damaged. Regular inspections of the Fox Terminal were made, so the collision must have occurred between 4:30 p.m., January 11, and 7 a.m., January 12. Impact markings indicated that floating objects above the ice level caused the damage. The defendants' barges were recovered both at Mile 175 and near the Fox Terminal. There were no witnesses to the actual impact.

As a result of the collision, two ice deflectors (which serve to protect the dock from floating debris and ice), two pile clusters (which are piles driven into the river bottom used to protect the dock and secure vessels), and three "bents" (pilings to which cross-bracings are attached to support

the deck) were destroyed. Detailed evidence offered by the plaintiff tended to establish that the total cost of repairing the damage would be $78,050. This figure was obtained by an independent marine surveyor, Cairo Marine Service, Inc., which had in turn obtained the estimate from an independent construction contractor, Vollmer Bros. Construction Company of St. Louis, Missouri. The defendants' surveyor testifying at trial offered no final cost figures in estimation of repairs, but it is indicated by the record that they were in considerable agreement as to the extent of the injuries to the dock.

Appellant asserts that failure to procure a decision on appellees' post-trial motion before filing their notice of cross-appeal constituted an abandonment of the issues raised in both the motion and on appeal. We are not persuaded that such is the case, but since the issue is not dispositive of the case, we shall proceed to the merits.

■■ We note that the present facts involve admiralty subject matter. Under the Judiciary Act of 1789, the first Congress of the United States granted to the Federal courts original and exclusive jurisdiction over all civil cases involving maritime litigation. However, an important exception to exclusive Federal jurisdiction and one which establishes concurrent jurisdiction over such matters in both State and Federal courts is found in what has become known as the "saving clause." That clause, found today in 28 U.S.C. §1333(1) (1976), allows to suitors "in all cases all other remedies to which they are otherwise entitled." (*Cf. Panama R.R. Co. v. Vasquez* (1926), 271 U.S. 557; 70 L. Ed. 1085, 46 S. Ct. 596.) However, it is a well-established proposition that where a State court hears an admiralty cause under the "saving clause," the substantive law which it must employ is that law which the Federal courts would apply were they to entertain the case. (*Garrett v. Moore-McCormack Co.* (1942), 317 U.S. 239, 87 L. Ed. 239, 63 S. Ct. 246; *Carlisle Packing Co. v. Sandanger* (1922), 259 U.S. 255, 66 L. Ed. 927, 42 S. Ct. 475.) Further, it is part of that substantive law that property damage caused by a vessel on navigable waters comes under the aegis of admiralty jurisdiction even though the damage is done or consummated on land. 46 U.S.C. §740 (1948); see also *Gutierrez v. Waterman Steamship Corp.* (1963), 373 U.S. 206, 10 L. Ed. 2d 297, 83 S. Ct. 1185.

■■ First, we wish to dispose of cross-appellants' contention that their liability for damages to the Fox Terminal was not proved on the evidence at trial. It is fundamental that the findings of a district court, in an admiralty case heard without benefit of a jury, will not be set aside unless those findings are clearly erroneous. (*First National Bank v. Material Service Corp.* (7th Cir. 1979), 597 F.2d 1110; *United Barge Co. v. Notre Dame Fleeting & Towing Service, Inc.* (8th Cir. 1978), 568 F.2d 599; *Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western*

*R.R. Co.* (7th Cir. 1976), 539 F.2d 1107.) And even where a court of appeals might have held contrary to a district court on the issue of proximate cause, were it to have heard the case acting as trier of fact, such court would nonetheless uphold the district court unless it was left with a definite and firm conviction that there had been error in the findings on that issue. (*United States v. Soriano* (9th Cir. 1966), 366 F.2d 699.) The court of appeals may not substitute its judgment for that of a district judge sitting without a jury unless the record presents no substantial evidence to sustain the findings sought to be overturned. (*Parham v. Pelegrin* (8th Cir. 1972), 468 F.2d 719.) And in further regard to the sufficiency of the evidence, it is not necessary that direct evidence be presented where circumstantial evidence is sufficient to support a determination. (*Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 5 L. Ed. 2d 20, 81 S. Ct. 6.) We can find no reason presented by the record before us to alter the decision of the circuit court as to liability, and so affirm.

We now turn to the central issue of the proper measure of damages to be awarded. Our object in taking remedial action to satisfy an injured complainant is to, as nearly as is possible, restore him to the same condition he was in prior to the tortious conduct involved. (See Restatement (Second) of Torts §901, Comment a, at 452 (1979).) Here Alton & Southern was possessed of a dock facility which may have been old and deteriorated according to industry standards, but one which nonetheless was serviceable and functioning. The record reveals that over 14,000 tons of freight crossed this dock in 1972 alone. Despite appellee's contentions to the contrary, this was a useful facility and one in which Alton & Southern saw fit to invest considerable maintenance and reconstruction funds as recently before the injury as 1967.

■■ It is the cost of repairing the various pilings destroyed which will properly compensate the appellant. (*Freeport Sulphur Co. v. The S/S Hermosa* (5th Cir. 1976), 526 F.2d 300; *Hewlett v. Barge Bertie* (4th Cir. 1969), 418 F.2d 654, *cert. denied sub nom C. G. Willis, Inc. v. Hewlett* (1970), 397 U.S. 1021, 25 L. Ed. 2d 531, 90 S. Ct. 126.) We do not disagree with the traditional rule which appellees cite by which depreciation is deducted from the cost of repairs in order to prevent a windfall to the injured party. The basis of the principle is that such repairs may actually enhance the value and useful life of the injured property beyond its pre-tort condition. But the principle is inapposite here. Repair costs for only a small fraction of the total number of pilings in the dock are sought. There is as well the testimony of appellee's own witness, Ralph F. Clark. More than once during his testimony he asserted unequivocally that neither the value nor the useful life of the facility would be increased as a result of the repair work considered herein. Where repairs do not add to the life expectancy or increase the market value of a pier in such collision cases,

the Federal jurisprudence is clear that no figures for depreciation are to be deducted from the award. (*Freeport Sulphur Co. v. The S/S Hermosa*; *Petition of Canal Barge Co.* (5th Cir. 1973), 480 F.2d 11.) This is also true where "[t]he repair or replacement adds nothing of substance to the overall value of the structure of which it is an integral part * * *." *Oregon v. Tug Go-Getter* (9th Cir. 1972), 468 F.2d 1270, 1274; see also *United States v. Ebinger* (2d Cir. 1967), 386 F.2d 557.

Therefore, pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5)), judgment is hereby entered in favor of the plaintiff, Alton & Southern Railway Company, and against the defendants, Alton Transportation Company, a corporation, Eagle Boat Stores Company, a corporation, Smitty's Harbor Service, Inc., a corporation, and Notre Dame Fleeting and Towing Service, Inc., a corporation, in the amount of $78,050 and court costs.

Affirmed as modified.

JONES, P. J., and KASSERMAN, J., concur.