SIXTH DIVISION

June 28, 2002

No. 1-01-3083

WENDY HERNANDEZ, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

)

)

NEW ROGERS PONTIAC, INC., )

and GENERAL MOTORS CORPORATION, ) Honorable

) John G. Laurie,

Defendants-Appellees. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Wendy Hernandez, appeals the order of the circuit court dismissing her complaint against defendants, New Rogers Pontiac, Inc., and General Motors Corporation, on 
res
 
judicata
 grounds.  On appeal, plaintiff argues that 
res
 
judicata
 does not apply, because there was no prior final judgment on the merits of her lawsuit.  We affirm.

At the evidentiary hearing on defendants' motion to dismiss, plaintiff testified that she purchased a 1999 Pontiac Grand Am from defendant New Rogers Pontiac, Inc.  Plaintiff subsequently discovered that her Grand Am was defectively sealed, causing water to leak into the car during rainstorms.

Plaintiff testified that in April 2000 she e-mailed an attorney, Adam Krohn, to "see if [she] had a case."  Mr. Krohn called plaintiff at work, and they discussed the problems that she was having with the car.  However, plaintiff testified that she did not authorize Mr. Krohn to file a lawsuit on her behalf.

On April 25, 2000, plaintiff received a letter from Mr. Krohn stating in pertinent part:

"Please allow this letter to confirm our conversation of April 25, 2000, at which time you engaged our firm to represent you regarding your 'lemon law/breach of warranty' claim. *** We have agreed that you will remain responsible only for the 'out-of-pocket' 
costs
 (not attorney time) associated with your claim.  These 
costs
 total anywhere from $303.40 to $466.80 (depending on the defendant)***.  We have agreed to defer these costs until the resolution of your case.  The only 
cost
 you have to pay during the pendency of your claim is the 
$150.00
 inspection fee."  (Emphasis in original.)

Plaintiff never signed the letter or had the car inspected.

In April and May, plaintiff received the following correspondence from Mr. Krohn: a letter thanking her for choosing the law firm of Krohn & Moss; a letter stating that plaintiff had a claim under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-Moss Act) (15 U.S.C. §2301 (1994)) and the Uniform Commercial Code (810 ILCS 5/1-101 (West 1992)); and a letter informing her that the firm had prepared a lawsuit.  

On May 25, 2000, Krohn & Moss filed a three-count complaint 
naming the plaintiff against defendant General Motors seeking  damages for alleged breaches of written and implied warranties and revocation of acceptance pursuant to the Magnuson-Moss Act.

Plaintiff testified that she never received a copy of the complaint and that she never authorized Mr. Krohn to file a lawsuit on her behalf.  Plaintiff also testified that she never responded to any of Mr. Krohn's correspondence, "because [she] figured [she'd] have to sign something for him to go and file the lawsuit."

In June, Mr. Krohn's secretary called plaintiff at work and mentioned "some sort of letter that [she] needed to sign" and also asked her if she was going to have the car inspected.  Plaintiff never signed any letter or had the car inspected; instead, plaintiff testified that she "blew off" Mr. Krohn's secretary.  When asked why she had "blow[n] her off", plaintiff testified: 

"[A]t the time, my car wasn't giving me any more problems, and I wasn't sure I needed to [sue] anymore."

Plaintiff testified that in June 2000, she sent an e-mail to Mr. Krohn telling him that her car was fixed and that she did not want him to pursue a lawsuit.  Plaintiff further testified:

"Q. Did you at any point before that or at that time hire Mr. Krohn to do a lawsuit?

A. No.

Q. Why did you not hire him?

A. Because I thought my car was fixed.  I didn't–Also, I didn't trust him."

Plaintiff testified that after sending Mr. Krohn her e-mail message, he called her the next day.  Plaintiff reiterated to Mr. Krohn that she did not want him to proceed with any lawsuit because her car was now fixed.  Mr. Krohn responded that she should "get something" for her troubles with the car.  Plaintiff testified that she "kind of blew him off and told him to let me know."  Plaintiff further testified:

"Q. What did you mean when you said, 'let me know'?

A. To get back with me because I didn't know how he was going to do that when I never gave him any money.  I never signed anything.

Q. Did you at that point authorize Mr. Krohn to file a lawsuit on your behalf?

A. No.

Q. Did you at that time or any time before even know that the lawsuit had already been filed on your behalf?

A. No.

Q. Why didn't you know?

A. Because I never sent him any money.  I never had my car inspected, and I never signed anything."

Plaintiff further testified that she later received two letters from Mr. Krohn, dated August 9, 2000, which stated that he had settled her case for $4,000.  Plaintiff testified that prior to August 9, Mr. Krohn never advised her about any settlement offers.

On August 10, Mr. Krohn tendered to the court an agreed order dismissing the case with prejudice.  Plaintiff testified that Mr. Krohn never informed her that he was going to dismiss the case, nor did she authorize the dismissal.  Plaintiff further testified that she received a letter from Krohn and Moss dated August 18, 2000, which stated that the sender was enclosing a release for her to execute in order to finalize the settlement of her claim.  Plaintiff never signed the release or the settlement agreement.  

Mr. Krohn testified that he entered into an oral agreement with plaintiff to represent her in her lawsuit against defendants, that she never told him to stop representing her, and that she expressly authorized him to settle the lawsuit.  Mr. Krohn testified that he relayed the settlement offer to plaintiff, who responded "Great.  That's fine."   Mr. Krohn also told plaintiff that the case would be dismissed if she accepted the settlement.  Plaintiff responded "Great."  Mr. Krohn admitted, however, that plaintiff never signed the $4,000 settlement agreement and that plaintiff still has not received the $4,000.  Mr. Krohn also testified that although plaintiff never signed the settlement agreement, he entered into an agreed order dismissing the case.  Pursuant to the fee-shifting provision of the Magnuson-Moss Act, General Motors paid Mr. Krohn $2,500 in attorney fees by a check separate from damages for plaintiff. 

Later, plaintiff hired the law firm of Brooks, Adams & Tarulis, which filed a second lawsuit on behalf of plaintiff against defendants.  The trial court found this second lawsuit involved the same parties and the same cause of action as the earlier lawsuit settled by Mr. Krohn and that the dismissal order agreed to by Mr. Krohn constituted a final judgment on the merits rendered by a court of competent jurisdiction.  Accordingly, the trial court granted defendants' motion to dismiss on 
res
 
judicata
 grounds pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)).  Plaintiff filed this timely appeal.

Where, as here, the trial court grants a section 2-619 motion to dismiss following an evidentiary hearing, "the reviewing court must review not only the law but also the facts, and may reverse the trial court order if it is incorrect in law or against the manifest weight of the evidence."  
Kirby v. Jarrett
, 190 Ill. App. 3d 8, 13 (1989).

The doctrine of 
res
 
judicata
 provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the same parties involving the same cause of action.  
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 302 (1998).  The essential elements of 
res
 
judicata
 are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies.  
River Park
, 184 Ill. 2d at 302.  

Plaintiff does not dispute that the second and third elements of 
res
 
judicata
 (identity of cause of action and identity of parties) are satisfied here.  Rather, plaintiff contends that 
res
 
judicata
 does not apply because there was no final judgment on the merits rendered by a court of competent jurisdiction in the prior lawsuit.  Specifically, plaintiff argues that in the absence of a written fee agreement with Mr. Krohn, all legal work performed by Mr. Krohn on plaintiff's behalf (including the settlement agreement and agreed dismissal order) is void.  Since the agreed dismissal order is void, it cannot constitute a final judgment on the merits precluding her from bringing this second lawsuit against defendants.

Plaintiff cites Rule 1.5(c) of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1,5(c)) in support of her argument that the legal work performed by Mr. Krohn is void in the absence of a written fee agreement.  Rule 1.5(c) states in pertinent part that a "contingent fee agreement shall be in writing."  134 Ill. 2d R. 1.5(c).  See also 
In re Spak
, 188 Ill. 2d 53 (1999) (holding that a contingent fee agreement must be reduced to writing).  Here, though, there was no contingent fee agreement.  The Illinois Rules of Professional Conduct defines contingent fee agreement as: 

"[A]n agreement for the provision of legal services by a lawyer under which the amount of the lawyer's compensation is contingent in whole or in part upon the successful completion of the subject matter of the agreement, regardless of whether the fee is established by formula or is a fixed amount."  134 Ill. 2d Illinois Rules of Professional Conduct, Preamble.  

Under this definition, a contingent fee agreement is contractual in nature, as it is an agreement whereby the lawyer provides legal services to a client in consideration for payment upon successful completion thereof.  See 
Hamilton Bancshares, Inc. v. Leroy
, 131 Ill. App. 3d 907, 911 (1985)(defining contract as "an agreement between competent parties, upon a consideration sufficient in law, to do or not to do a particular thing.)"

 Here, no contract existed obligating plaintiff to pay Krohn's attorney fees; rather, Krohn's attorney fees were paid by General Motors pursuant to a statute (the fee-shifting provision of the Magnuson-Moss Act).  Since Mr. Krohn's fees were paid pursuant to statute rather than pursuant to a contingency fee contract, Rule 1.5's requirement that contingency fee contracts be in writing is not applicable here. Thus, Mr. Krohn's legal work on behalf of plaintiff (including the settlement agreement and agreed dismissal order) is not made void by his failure to reduce the fee agreement to writing.  The agreed dismissal order constitutes a valid final judgment on the merits precluding plaintiff's second lawsuit against the same defendants on the same issues.

Plaintiff argues that 
Berrios v. Rybacki
, 236 Ill. App. 3d 140 (1992), compels a different result.  In 
Berrios
, the issue was whether two attorneys who successfully challenged certain rules adopted by the Illinois Industrial Commission were entitled to apply a multiplier when calculating the attorney fees awarded under the fee-shifting provision of section 14.1(b) of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1014.1(b)).  

In determining that the use of a multiplier was improper, the appellate court noted the nature of fees awarded under the fee-shifting portion of the statute.  
Berrios
, 236 Ill. App. 3d at 147, n.3.  However, the court did not address the issues here, 
i.e.
, (1) whether the fees awarded under the fee- shifting statute fall within Rule 1.5(c) and must be reduced to writing; and (2) whether the failure to reduce such fees to writing voids the legal work performed by the attorney, thereby defeating a claim of 
res
 
judicata
 based upon said legal work.  Accordingly, 
Berrios
 is inapposite.

Next, plaintiff contends that 
res
 
judicata
 does not apply here because she never retained Mr. Krohn as her attorney or otherwise authorized Mr. Krohn to settle or dismiss her lawsuit against defendants.  Plaintiff argues that, in the absence of an attorney-client relationship or the express authority to settle and dismiss her case, Mr. Krohn had no power to bind her to the settlement and dismissal order,  and thus, the dismissal order is void and does not constitute a final judgment precluding her from bringing this second lawsuit against defendants.  

We disagree.  During the evidentiary hearing held on defendants' section 2-619 motion to dismiss, Mr. Krohn testified that plaintiff hired him to represent her against defendants and that plaintiff gave him the express authority to settle the case. Mr. Krohn further testified that he relayed the settlement offer to plaintiff and informed her that the case would be dismissed.  Plaintiff responded, "Great."  Mr. Krohn's testimony supports the trial court's finding that an attorney-client relationship existed between plaintiff and Mr. Krohn, that plaintiff authorized the settlement and subsequent dismissal, and, thus, that the dismissal order constituted a valid final judgment precluding plaintiff's second lawsuit against the same defendants on the same issues.   See 
Kirby v. Jarrett
, 190 Ill. App. 3d 8, 13 (1989) (where as here, the trial court conducts an evidentiary hearing on a section 2-619 motion to dismiss, the appellate court will not reverse the court's factual findings unless they are against the manifest weight of the evidence).

Plaintiff argues that 
Brewer v. National R.R. Passenger Corp.
, 165 Ill. 2d 100 (1995), compels a different result.  In 
Brewer
, plaintiff brought a personal injury action against defendant (his employer).  
Brewer
, 165 Ill. 2d at 102.  The attorneys reached a settlement agreement in which defendant agreed to pay plaintiff a sum of money.  The parties disagreed on plaintiff's duties under the settlement.  According to defense counsel, plaintiff's attorney agreed that plaintiff would quit his job with defendant.  However, according to plaintiff's counsel, he never agreed to that condition.  
Brewer
, 165 Ill. 2d at 103. 

After the attorneys reached the settlement, the trial court dismissed the lawsuit with prejudice.  Defendant later moved to enforce its version of the settlement agreement.  Plaintiff moved to vacate the dismissal order.  
Brewer
, 165 Ill. 2d at 103. Plaintiff's attorney, plaintiff, and plaintiff's wife each submitted an affidavit testifying that plaintiff never agreed to quit his job and never authorized his attorney to make such an agreement.   
Brewer
, 165 Ill. 2d at 103.  The trial court denied plaintiffs' motion to vacate the dismissal order and ordered plaintiff to quit his job.  
Brewer
, 165 Ill. 2d at 104.  Plaintiff appealed to the supreme court, which held:

"Where a settlement is made out of court and is not made a part of the judgment, the client will not be bound by the agreement without proof of express authority.  This authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact.  [Citation.]  Further, in such a case, opposing counsel is put on notice to ascertain the attorney's authority.  If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, opposing counsel deals with the attorney at his or her peril."  
Brewer
, 165 Ill. 2d at 105-06.

The supreme court noted that the record contained "uncontradicted evidence" that plaintiff did not expressly authorize his attorney to agree that plaintiff would quit his job.  
Brewer
, 165 Ill. 2d at 107.  Accordingly, the supreme court reversed the trial court's order requiring plaintiff to quit his job.  
Brewer
, 165 Ill. 2d at 107.

Unlike 
Brewer
,  there was evidence here (from Mr. Krohn) that plaintiff expressly authorized him to settle her case against defendants.  As discussed, Mr. Krohn's testimony was sufficient to support the trial court's finding that plaintiff authorized the settlement and subsequent dismissal and, thus, that the dismissal order was a final judgment for purposes of 
res
 
judicata
. 

Finally, plaintiff argues that Mr. Krohn breached his fiduciary duties toward her by: (1) agreeing to dismiss the case with prejudice without first waiting for her to sign the settlement agreement; and (2) failing to move to vacate the dismissal order after she refused to sign the settlement agreement.  Plaintiff makes no argument and cites no cases showing that Mr. Krohn's alleged breach of fiduciary duties affects the validity of the prior final judgment or otherwise defeats defendants' claim of 
res
 
judicata
.  Accordingly, plaintiff has waived review of the issue.  155 Ill. 2d R. 341(e)(7).  We also note that the issue of Mr. Krohn's alleged breach of fiduciary duties is not otherwise properly before us.  Rather, the only issue here is whether the trial court erred in dismissing plaintiff's complaint against defendants on 
res
 
judicata
 grounds.  As discussed, the trial court did not err in dismissing plaintiff's complaint.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER, P.J., and O'MARA FROSSARD, J. concur.