JAMES MACK *et al.*, Plaintiffs and Respondents-Appellees, v. ROYAL CARIBBEAN CRUISES, LTD., Defendant and Petitioner-Appellant.

First District (4th Division)    No. 1—04—2168

Opinion filed October 20, 2005.

858

QUINN, P.J., specially concurring.

Paul J. Kozacky & Associates, P.C., of Chicago (Paul J. Kozacky, Jerome R. Weitzel, and Jeffrey S. Becker, of counsel), for appellant.

Paul B. Episcope, L.L.C., of Chicago (Michael T. Mullen and Anthony J. Masciopinto, of counsel), for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs James and Sheila Mack brought suit against defendant Royal Caribbean Cruise Lines, Ltd., alleging that James cut his foot in the swimming pool area of a cruise ship owned and operated by defendant. Plaintiffs alleged that defendant was liable for negligently maintaining its swimming pool area; that defendant was vicariously liable for the negligent medical treatment James received from defendant's on-board physician; and that defendant was liable to Sheila for loss of consortium. Pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), defendant now appeals the trial court's interlocutory orders reinstating the plaintiffs' vicarious liability count and denying defendant's motion to dismiss.

Plaintiffs filed suit on November 29, 2001. Defendant moved to dismiss the vicarious liability and loss of consortium counts of plaintiff's complaint on the grounds that federal admiralty law did not recognize those causes of action. Initially, the trial court granted defendant's motion; however, on June 2, 2004, the trial court granted plaintiff's motion to reinstate the vicarious liability count after

considering the recent holding of the Florida appellate court in *Carlisle v. Carnival Corp.*, 864 So. 2d 1 (Fla. 2003), *appeal allowed*, 904 So. 2d 430 (2005). *Carlisle* held that a passenger injured by the negligent treatment of a cruise line's on-board physician could maintain a vicarious liability cause of action against the cruise line.

Defendant also moved to dismiss the case on the grounds that the forum selection clause in the ticket contract between the parties required plaintiffs to bring suit in Miami, Florida. The case proceeded to an evidentiary hearing on this issue.

Nancy Calvo Varela testified that on March 2001, plaintiffs met with her to discuss Mediterranean cruises. Varela, a travel agent for American Express Travel, doing business as Crossroads Travel Service (hereinafter Crossroads Travel), provided plaintiffs with several brochures. Varela testified that on March 14, 2001, Sheila visited Crossroads Travel to place a deposit on a cruise offered by defendant. On June 8, 2001, Sheila visited Crossroads Travel to make final payment on the cruise. On June 28, 2001, Sheila visited Crossroads Travel a final time to pick up her trip information. Varela identified a ticket booklet at the hearing. While not identical, the booklet was essentially the same as the one Varela testified that she had given Sheila. It provided in relevant part:

"IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN MIAMI, FLORIDA, U.S.A., TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY, OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI, FLORIDA."

Varela testified that on June 28, 2001, when she gave Sheila the ticket booklet, she explained that Sheila should read the booklet and that it would need to be signed before the plaintiffs could board the ship. Varela did not discuss the substance of the booklet or specifically refer Sheila to the forum selection clause. Varela testified that the booklet would have contained both ground transportation vouchers that would have allowed plaintiffs to board the bus from the airport in Rome to the pier in Civitavecchia, Italy, and tickets that would allow them to board the ship once they arrived at the pier. Varela testified that if a cruise passenger arrived at the dock without a ticket, he would be required to sign a ticket dockside before boarding the ship.

Sheila testified that she, James and their daughter met with Varela

in early March 2001 to discuss booking a cruise. On March 14, 2001, Sheila placed a deposit on the trip and Varela gave her an itinerary, a confirmation slip from Fun Jet airline and confirmation vouchers for plaintiffs' transportation from the airport to the ship. On June 8, 2001, James made the final payment on the trip. On June 28, 2001, Sheila received a folder from Varela that included plaintiffs' airline tickets and luggage tags. Sheila testified that she did not receive a ticket booklet. James testified that his wife was responsible for making all of the arrangements for the trip. He also did not receive a ticket booklet at any time.

Plaintiffs testified that upon their arrival in Rome, they were directed to a bus that would transport them to the cruise ship in Civitavecchia, Italy. Defendant's staff asked plaintiffs to present their ground transportation tickets, which they did not have. Nonetheless, plaintiffs were permitted to board the bus because their names appeared on the passenger list. Plaintiffs testified that when they arrived at the pier, defendant's representatives requested that plaintiffs present their tickets to board the ship, which plaintiffs also did not have. Plaintiffs were directed to wait in the "problem" line. Plaintiffs were each asked to sign a small perforated sheet that provided:

"THIS IS YOUR CRUISE TICKET CONTRACT. IT IS IMPORTANT THAT YOU READ ALL TERMS OF THIS CONTRACT (PP1-2). THIS TICKET IS NOT TRANSFERABLE AND IS NOT SUBJECT TO ALTERATIONS BY THE GUEST."

Plaintiffs testified that nothing was attached to the small sheet.

Plaintiffs signed the perforated sheet after being informed that no family member could board the ship without signing the document. Sheila assumed the document was to open an on-board charge account. James admitted that he did not scrutinize the perforated sheet. When the plaintiffs signed the perforated sheet, both were distracted by their young daughter and had had little rest since leaving for their trip.

Concerning the hardship that plaintiffs would endure if forced to litigate their case in Florida, Sheila testified that James is partially paralyzed and that he is unable to use the bathroom and must use a urine bottle when traveling. James testified that he must switch to a smaller wheelchair when he boards airplanes and must carefully monitor what he eats and drinks. James testified that both his wife and daughter would accompany him to Miami, Florida, to litigate the suit because he requires Sheila's help in traveling and his second-grade daughter would have nobody to take care of her in Chicago. Nonetheless, plaintiffs admitted that since his injury, James had taken trips to New York, Denver and Cancun.

On July 12, 2004, the trial court made several factual and legal findings. The trial court found that plaintiffs never received a complete ticket contract containing the forum selection clause, and the only portion of a ticket contract ever provided by defendants to plaintiffs was the perforated sheet to which nothing was attached. Furthermore, the trial court found that at no time was the forum selection clause otherwise communicated to plaintiffs by defendant or Crossroads Travel. Accordingly, plaintiffs never accepted the terms of the clause. The court further found that litigating the suit in Miami, Florida, would be "extremely difficult, if not impossible" for James, given his physical handicap and financial hardships. Accordingly, the trial court denied defendant's motion to dismiss.

The trial court certified the following two questions to this court:

"1. Under federal admiralty law, is a state court bound to apply federal admiralty precedent precluding vicarious liability claims against cruise lines for the alleged negligence of shipboard doctors, or is it free to permit such a vicarious liability claim against a cruise line?

2. Under federal admiralty law, does a passenger's signature on a ticket contract which contains a forum selection clause bind the passenger to the forum designated therein despite the passenger's claim that he did not timely receive or read the forum selection clause?"

On October 20, 2004, pursuant to Rule 308, we granted defendant's application to appeal. After the parties had fully briefed their arguments, on March 31, 2005, defendant moved to strike plaintiffs' argument that the forum selection clause should not be enforced because enforcement would cause them undue physical and financial hardship. According to the motion, on October 22, 2004, defendant served plaintiffs with interrogatories inquiring about any trips James had taken since his original deposition. Plaintiffs had failed to respond to the interrogatories. On April 11, 2005, we allowed the motion and took it with the case.

■ We will first address the outstanding motion. In reviewing the trial court's order denying defendant's motion to dismiss, this court is confined to consider evidence and matters considered by the trial court in issuing its order. *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 363-64 (1983); *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 237 (1990). The trial court's July 12, 2004, determination that the case should not be dismissed was based on the evidence presented during the evidentiary hearing. Defendant's interrogatories were served after this court had granted defendant's application for appeal. Because we review only the matters considered by the trial court,

plaintiffs' failure to respond to the interrogatories at issue has no bearing on our analysis. Accordingly, we deny defendant's motion to strike plaintiffs' argument regarding the physical and financial hardship they would experience as a result of enforcement of the forum selection clause.

We turn now to the trial court's second certified question regarding the enforceability of the forum selection clause. Defendant contends that the trial court erred in refusing to dismiss this suit based upon the forum selection clause in the ticket contract because the evidence adduced at the hearing supports the conclusion that the forum selection clause was reasonably communicated to plaintiffs. Plaintiffs respond that the evidence indicated that the clause was not reasonably communicated and that the evidence further indicated they would suffer physical and financial hardship if the clause were enforced.

■ ■ A cruise ticket is a maritime contract governed by federal admiralty law. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 113 L. Ed. 2d 622, 629, 111 S. Ct. 1522, 1525 (1991). Forum selection clauses are " 'prima facie valid.' " *Shute*, 499 U.S. at 589, 113 L. Ed. 2d at 629, 111 S. Ct. at 1525, quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10, 32 L. Ed. 2d 513, 520, 92 S. Ct. 1907, 1913 (1972). Nonetheless they are subject to "judicial scrutiny for fundamental fairness." *Shute*, 499 U.S. at 595, 113 L. Ed. 2d at 633, 111 S. Ct. at 1528. Federal courts have employed a two-pronged "reasonable communicativeness" test to determine whether a contract clause was reasonably communicated to a passenger and was, therefore, contractually binding. *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002); *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001). Unless both prongs of the test are met, the contract clause will not be enforced. See *Wallis*, 306 F.3d at 835-37; *Ward*, 273 F.3d at 523. The first prong of the test examines the appearance of the ticket, including " ' "size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." ' " *Wallis*, 306 F.3d at 835-36, quoting *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987), quoting *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 864 (1st Cir. 1983). The second prong of the test focuses on external circumstances, such as the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice the passenger received outside of the ticket. *Ward*, 273 F.3d at 525. In order to determine whether a clause was reasonably communicated, a court applies " ' "an analysis of the overall circumstances on a case-by-case basis, with an examination not only of

the ticket itself, but also of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." ' " *Wallis*, 306 F.3d at 835, quoting *Deiro*, 816 F.2d at 1364, quoting *Shankles*, 722 F.2d at 866. Courts may also consider physical or financial impediments suffered by plaintiffs when deciding whether to enforce a forum selection clause. *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1140-41 (N.D. Cal. 2000). Because the trial court's determination that the forum selection clause would not be enforced depended on its factual findings, we will not reverse unless those findings were contrary to the manifest weight of the evidence. *Hernandez v. New Rogers Pontiac, Inc.*, 332 Ill. App. 3d 461, 464 (2002).

■ At the evidentiary hearing, Varela testified that she gave plaintiffs the ticket booklet containing the forum selection clause before embarking on their trip. Varela further testified that the booklet would have contained plaintiffs' bus and cruise tickets. Plaintiffs testified that they were not given the booklet. Plaintiffs' testimony was supported by the uncontested fact that, upon arrival in Italy, plaintiffs were unable to provide defendant's representatives with either the bus or cruise tickets. Plaintiffs further testified that the perforated sheet they signed dockside was not attached to a larger document containing the forum selection clause. While defendant now argues that a document containing the clause would have been attached to the perforated sheet, it offered no direct testimony to that effect during the hearing. Plaintiffs' testimony further indicated that, though James had taken several trips since the cruise, traveling to Miami, Florida, to litigate the case would be difficult because of James' disability and because Sheila and plaintiffs' daughter would be forced to accompany him. The court found that plaintiffs were never given any document containing the forum selection clause or otherwise informed of the content and restrictions imposed by the clause. Consequently, plaintiffs had not accepted the terms of the clause. The court further found that forcing plaintiffs to litigate in Miami, Florida, would cause undue hardship. Given the evidence presented during the hearing in support of the trial court's conclusion and the scant evidence presented to dispute it, we cannot say that the trial court's conclusion that the forum restriction was not reasonably communicated to plaintiff was contrary to the manifest weight of the evidence.[1]

We turn now to the trial court's inquiry as to whether federal law

---

[1]Notably, even if the trial court had found that a document containing the forum selection clause were attached to the perforated sheet signed by plaintiffs dockside, *Ward* suggests that a finding that the clause was not

requires dismissal of plaintiffs' vicarious liability count. Defendant argues that, in reinstating the vicarious liability claim, the trial court ignored a largely established rule of law which precludes vicarious liability counts against carriers for the alleged negligence of shipboard doctors. Plaintiffs respond that the trial court was correct to follow the more reasoned approach of modern cases, which allows vicarious liability claims against carriers.

■■ ■ Torts committed within the boundaries of maritime jurisdiction are subject to maritime law. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 3 L. Ed. 2d 550, 553, 79 S. Ct. 406, 408-09 (1959). Generally, under maritime law, a carrier owes a duty to its passengers to exercise reasonable care under the circumstances. See *Kermarec*, 358 U.S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406. Section 1333(1) of the Judiciary and Judicial Procedure Act provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the State, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (2000). Section 1333(1), known as the "saving to suitors" clause,

> "leaves state courts competent to adjudicate maritime causes of action in proceedings *in personam* and means that 'a state, "having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit" so long as it does not attempt to [give *in rem* remedies or] make changes in the "substantive maritime law." ' [Citations.] Stated another way, the 'saving to suitors' clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23, 91 L. Ed. 2d 174, 189-90, 106 S. Ct. 2485, 2494 (1986), quoting *Madruga v. Superior Court*, 346 U.S. 556, 560-61, 98 L. Ed. 290, 296, 74 S. Ct. 298, 300-01 (1954), quoting *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 124, 68 L. Ed. 582, 587, 44 S. Ct. 274, 277 (1924).

*Alton & Southern Ry. Co. v. Alton Transportation Co.*, 79 Ill. App. 3d

---

reasonably communicated would nonetheless be proper. In *Ward*, the plaintiff received the ticket containing language limiting the time in which she could bring a cause of action moments before boarding the boat. The *Ward* court held that "possession of the ticket for such a short period of time was insufficient" to notify the plaintiff of the limitation language contained therein. *Ward*, 273 F.3d at 525.

591, 593 (1979); *In re Chicago Flood Litigation*, 308 Ill. App. 3d 314, 330-31 (1999).

■ We note that federal courts follow two approaches to a passenger's claim of medical negligence against a carrier. The traditional maritime rule provides:

> "When a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier." *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1998).

*The Korea Maru*, 254 F. 397, 399 (9th Cir. 1918); *The Great Northern*, 251 F. 826, 830-32 (9th Cir. 1918); *Di Bonaventure v. Home Lines, Inc.*, 536 F. Supp. 100, 103-104 (E.D. Pa. 1982); *Cimini v. Italia Crociere International S.P.A.*, 1981 A.M.C. 2674, 2677 (S.D.N.Y. 1981); *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033, 1042 (S.D.N.Y. 1969); *Branch v. Compagnie Generale Transatlantique*, 11 F. Supp. 832 (S.D.N.Y. 1935); *Churchill v. United Fruit Co.*, 294 F. 400, 402 (D. Mass. 1923); *The Napolitan Prince*, 134 F. 159, 160 (E.D.N.Y. 1904); *O'Brien v. Cunard Steamship Co.*, 154 Mass. 272, 276-77, 28 N.E. 266, 267 (1891); *Laubheim v. De Koninglyke Neder Landsche Stoomboot Maatschappy*, 107 N.Y. 228, 13 N.E. 781 (1887).

The *Barbetta* court articulated the "two justifications" for the age-old rule:

> "The first justification emphasizes the nature of the relationship between the passenger and the physician, and the carrier's lack of control over that relationship. ***
>
>> 'The work which the physician or surgeon does ... is under the control of the passengers themselves. It is their business, not the business of the carrier. ... The master or owners of the ship cannot interfere in the treatment of the medical officer when he attends a passenger. He is not their servant engaged in their business, and subject to their control as to his mode of treatment.'
>
> [Citations.] *** [T]he courts have also recognized a second restrictive force. ***
>
>> '[A] shipping company is not in the business of providing medical services to passengers; it does not possess the expertise requisite to supervise a physician or surgeon carried on board a ship as a convenience to passengers. A ship is not a floating hospital; a ship's physician is an independent medical expert engaged on the basis of his professional qualifications and carried on board a ship for the convenience of pas-

sengers, who are free to contract with him for any medical services they may require.' " *Barbetta*, 848 F.2d at 1369-70, quoting *O'Brien*, 154 Mass. at 276, 28 N.E. at 267, and *Amdur*, 310 F. Supp. at 1042.

As the *Barbetta* court pointed out, both justifications for the rule concern the control the shipowner exercises over its on-board doctor.

Nonetheless, in recent years, federal and state courts have declined to follow the traditional rule that a carrier will not be held liable for negligent treatment rendered by its on-board doctor. A federal district court first called the rule into question in 1959 in *Nietes v. American President Lines, Ltd.*, 188 F. Supp. 219, 221 (N.D. Cal. 1959). In *Nietes*, the court refused the defendant shipowner's request to follow what it considered an outdated and "ancient rule" and dismiss a wrongful death suit brought against the defendant pursuant to the doctrine of *respondeat superior*. *Nietes*, 188 F. Supp. at 220. The *Nietes* court held:

"[W]here a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of *respondeat superior* at least, in the nature of an employee or servant for whose negligent treatment of a passenger a shipowner may be held liable." *Nietes*, 188 F. Supp. at 220.

Several courts have rejected the *Nietes* court's reasoning and have adhered to the rule that an on-board physician's negligence will not be imputed to the carrier (see, *e.g.*, *Barbetta*, 848 F.2d at 1371; *Amdur*, 310 F. Supp. at 1042; *Di Bonaventure*, 536 F. Supp. at 103-04); nonetheless, other federal and state courts have followed *Nietes*. In *Fairley v. Royal Cruise Line Ltd.*, 1993 A.M.C. 1633 (S.D. Fla. 1993), and *Huntley v. Carnival Corp.*, 307 F. Supp. 2d 1372 (S.D. Fla. 2004), a federal district court criticized and refused to follow the *Barbetta* rule, opting instead to follow *Nietes*. In *Carlisle*, the Florida appellate court also found "*Nietes* to be the most persuasive precedent," and rejected a motion to dismiss a negligence claim based on vicarious liability against a defendant cruise line. *Carlisle*, 864 So. 2d at 5.

Notably, in addition to being criticized and rejected in the cases cited above, the rule barring vicarious liability claims against carriers for their on-board physicians' negligence has similarly been criticized by legal scholars. See, *e.g.*, T. Dickerson, *The Cruise Passenger's Dilemma: Twenty-First-Century Ships, Nineteen-Century Rights*, 28 Tul. Mar. L.J. 447, 452, 495-96 (2004) (criticizing the old line of cases as antiquated and "unfair," and noting that courts and commentators have criticized the rule); B. Herschaft, *Cruise Ship Medical Malpractice*

*Cases: Must Admiralty Courts Steer by the Star of Stare Decisis*, 17 Nova L. Rev. 575, 592, 594 (1992) (advocating the "well-reasoned decision of *Nietes*" and opining that "[i]t would be in the best interests of the traveling public for admiralty courts to revoke this harsh policy of holding carriers harmless for the torts of physicians engaged by them" and that "the judiciary has sufficient reason to resurrect the *Nietes* opinion *** so that public policy will be satisfied in admiralty as well as other areas of law"); Note, *Malpractice on the Love Boat: Barbetta v. S/S Bermuda Star*, 14 Tul. Mar. L.J. 381, 391 (1990) (characterizing the *Barbetta* holding as "flawed" and "outmoded"); see also T. Gionis, *Paradox on the High Seas: Evasive Standards of Medical Care—Duty Without Standards of Care; a Call for the International Regulation of Maritime Healthcare Aboard Ships*, 34 J. Marshall L. Rev. 751, 752-53 (2001) (noting the high number of illnesses and injuries occurring at sea).

The above-cited cases and scholarly works identify several compelling reasons to depart from the established rule barring vicarious liability claims. Whether vicarious liability will be imposed generally turns on the ability of the principle to control the acts of his agent and on a variety of other factors, including "whether the work is 'part of the regular business of the employer'; whether the contractor is engaged in a distinct calling; the degree of skill of the contractor; who supplies the locale, tools and instrumentalities; the period of employment and the method of payment." *Fairley*, 1993 A.M.C. at 1635, quoting Restatement (Second) of Agency § 220(2) (1958). The *Barbetta* court justifies its holding that liability for an on-board doctor's negligence should not be imputed to a cruise line by reasoning that the passenger, rather than the shipowner, controls the relationship between the passenger and the on-board doctor. The *Carlisle* court explained that the underlying basis for this justification is the statement passengers who fall ill at sea

" 'may employ the ship's surgeon, or some other physician or surgeon who happens to be on board, or they may treat themselves if they are sick, or may go without treatment if they prefer.' " *Carlisle*, 864 So. 2d at 5, quoting *O'Brien*, 154 Mass. at 276, 28 N.E. at 267.

The *Carlisle* court noted that a cruise line has a general duty to exercise reasonable care. Accordingly, the court referred to the *O'Brien* justification as a "fiction" and noted that "absent from this list is the option of demanding that the captain fulfill the duty of reasonable care 'in some other way,' likely because that concept was no more realistic in 1891 than it is today." *Carlisle*, 864 So. 2d at 5. Instead, both the *Carlisle* and the *Huntley* courts found that a passenger does

not have control over his relationship with a ship's doctor because "a cruise passenger at sea and in medical distress does not have any meaningful choice but to seek treatment from the ship's doctor." *Carlisle*, 864 So. 2d at 5; *Huntley*, 307 F. Supp. 2d at 1374; 17 Nova L. Rev. at 588-89; 14 Tul. Mar. L.J. at 389-90. The *Fairley* court also rejected the *Barbetta* court's first justification, finding that a passenger has little control over his relationship with an on-board doctor and stating:

> "Contrary to the reasoning of *Amdur* and *Barbetta*, [passengers] are not 'free to contract with [an on-board doctor] for any medical services they may require.' [Citations.] If a passenger is ill, and port is distant, the ship's doctor is the passenger's only resort, since evacuation by air rescue is expensive, possible and appropriate only for emergencies. Further, the passenger may be reluctant to seek treatment from an unknown doctor in a foreign country."
> *Fairley*, 1993 A.M.C. at 1638-39.

The second justification for the *Barbetta* rule is that shipowners are not in the business of providing medical care. However, it is entirely foreseeable that some cruise passengers at sea will develop medical problems. *Carlisle*, 864 So. 2d at 7; 17 Nova L. Rev. at 590; see also 34 J. Marshall L. Rev. 751. Accordingly, "[t]he treatment of cruise passengers by the ship's doctor *** is not alien to maritime pursuits." *Carlisle*, 864 So. 2d at 6; *Huntley*, 307 F. Supp. 2d at 1374. The *Nietes* court recognized the "difficulty inherent" in having a nonprofessional employer exercise control over a skilled physician, but reasoned that "the distinction no longer provides a realistic basis for the determination of liability in our modern, highly organized industrial society." *Nietes*, 188 F. Supp. at 220. The court concluded:

> "Surely, the board of directors of a modern steamship company has as little professional ability to supervise effectively the highly skilled operations involved in the navigation of a modern ocean carrier by its master as it has to supervise a physician's treatment of shipboard illness. Yet, the company is held liable for the negligent operation of the ship by its master. So too, should it be liable for the negligent treatment of a passenger by a physician or nurse."
> *Nietes*, 188 F. Supp. at 220-21.

Moreover, the realities of an on-board physician's relationship with a shipowner indicate that the physician is akin to an employee rather than an independent contractor.

> " '[A physician] is a staff officer aboard ship; and signs the articles as a member of the ship's company. He is subject to the ship's discipline under the general maritime law and is subject to the lawful commands of the master. When sick or injured he is entitled to the remedies of maintenance and cure, the Jones Act, and of a

seaworthy ship. Like the steward or radio operator, the ship's doctor is a seaman for purposes of personal injury remedies and for wage relief. The professional standing of a physician is not a valid argument for affording him a special status when a member of the ship's company. He must, in truth, be regarded as on par with fellow officers.' " 17 Nova L. Rev. at 585, quoting M. Norris, The Law of Maritime Personal Injuries § 3:10, at 75 (4th ed. 1990).

Furthermore:

"According to one local South Florida attorney, doctor contracts vary with each cruise line. For instance, some cruise lines may choose certain doctors for specific cruises. In other cases, the doctor may be employed for a fixed period of time such as six months. If these procedures are standard in any way, it would be fatuous for a carrier to insist that it has no capacity to evaluate a doctor's services, because it apparently has already done so by its selective employment practices." 17 Nova L. Rev. at 587.

Additionally, scholars and courts have reasoned that vicarious liability for an on-board physician's negligence should be imposed because cruise lines "reap[ ] the benefits of carrying a doctor aboard [their] vessels." *Fairley*, 1993 A.M.C. at 1639; *Nietes*, 188 F. Supp. at 221; 17 Nova L. Rev. at 590-91. While carriers do not have a duty to supply an on-board doctor, they do owe passengers in need a duty to provide reasonable medical attention under the circumstances. *Fairley*, 1993 A.M.C. at 1638. "This duty can be discharged by putting into port or summoning air rescue, or by carrying a physician, depending on the seriousness of the malady." *Fairley*, 1993 A.M.C. at 1638. The cruise line benefits because it "avoids many of these costs and inconveniences by the economic expedient of carrying the ship doctor." *Fairley*, 1993 A.M.C. at 1639; *Nietes*, 188 F. Supp. at 221; 17 Nova L. Rev. at 590-91. The cruise line further benefits "by advertising the availability of the ship doctor, since the presence of a qualified physician on board, with a well-equipped and well-staffed infirmary, is an enticement to purchase the ticket." *Fairley*, 1993 A.M.C. at 1639. As one scholar observed:

"Fierce competition among various cruise lines has led to the publication of elaborate, colorful brochures touting services aboard vessels, some of which specifically mention that they have medical facilities on board. For example, a brochure for Perillo Caribbean Cruises describes the cruise vessel and states: 'Stereo music and telephone in every cabin. Beauty salon, barber, hospital.' " 14 Tul. Mar. L.J. at 389.

Finally, the above-cited cases and articles reason that to impose vicarious liability on a cruise line for the negligent treatment of passengers by its on-board physician is not unreasonable because "the

cruise line is already held vicariously liable for the negligence of the same ship's doctor in the treatment of hundreds of people—the crew— under the maritime duty to provide maintenance and cure." *Carlisle*, 864 So. 2d at 7, citing *De Zon v. American President Lines, Ltd.*, 318 U.S. 660, 87 L. Ed. 1065, 63 S. Ct. 814 (1943); 14 Tul. Mar. L.J. at 391.

We agree with the well-reasoned approach of *Nietes*, *Huntley*, *Fairley* and *Carlisle*. A passenger on a ship who falls ill has no reasonable choice but to seek treatment from the on-board physician and therefore has little control over their relationship. Furthermore, that an illness would occur at sea should be anticipated, particularly by the cruise industry, and most certainly illnesses do regularly occur at sea. See 34 J. Marshall L. Rev. 751. Accordingly, providing medical treatment for its passengers should be considered a part of a cruise line's business, as evidenced, in part, by federal maritime law's willingness to impose vicarious liability on shipowner's for their on-board physician's negligence in treating crew members. Moreover, cruise lines benefit from carrying on-board physicians.

■ Furthermore, while we acknowledge that we are bound by federal statute to follow federal maritime law in this matter (see 28 U.S.C. § 1333(1) (2000); *Offshore Logistics, Inc.*, 477 U.S. at 222-23, 91 L. Ed. 2d at 189-90, 106 S. Ct. at 2494), *Nietes* and the federal cases that have followed its reasoning and holding indicate that the question of whether a vicarious liability claim against a shipowner for the negligent treatment by its on-board doctor will stand under maritime law is not settled at this time. Accordingly, for the reasons stated above, we elect to follow the holding of the federal courts in *Nietes*, *Huntley* and *Fairley*.

We therefore affirm the trial court's interlocutory orders denying defendant's motion to dismiss and reinstating plaintiffs' vicarious liability count.

Affirmed.

CAMPBELL, J., concurs.

PRESIDING JUSTICE QUINN, specially concurring.

I concur with the majority's conclusions on both of the issues before us. I agree that the factual findings made by the circuit court as to the paucity of evidence that the Macks received the forum selection clause are not against the manifest weight of the evidence. The evidence presented by both sides would have provided a basis for the circuit court to rule in either party's favor. While it would seem to be extremely easy for the defendant to have retained a copy of the forum

clause signed by the plaintiffs, the defendant did not take this precaution. Consequently, I agree with affirming the circuit court's finding on this issue.

As to the issue of whether a vicarious liability claim may be stated by a passenger against a shipowner for alleged negligent treatment by its shipboard doctor, I concur with the majority that, on the facts of this case as presented to us, the circuit court correctly denied defendant's motion to dismiss. It is important to note that in reaching this conclusion, this court acknowledges that we are bound by section 1333(1) of the Judiciary and Judicial Procedure Act to follow federal maritime law in this case. 28 U.S.C. § 1333(1) (2000). See *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23, 91 L. Ed. 2d 174, 190, 106 S. Ct. 2485, 2494 (1986). Unfortunately, federal maritime law may charitably be described as in a state of flux at this time.

The defendant argues that *De Zon v. American President Lines, Ltd.*, 318 U.S. 660, 87 L. Ed. 1065, 63 S. Ct. 814 (1943), is dispositive. There, the Supreme Court reviewed the claim of a seaman against his employer based on the alleged negligence of a shipboard doctor in treating the seaman's injuries. The Supreme Court held that, pursuant to the Jones Act (46 U.S.C. § 688 (2000)), a shipowner is liable in damages for injuries suffered by a seaman as the result of any negligence on the part of the ship's physician in treating the seaman. In a footnote, the Supreme Court pointed out that "liability to a passenger injured by the negligence of a ship's doctor has been denied" by several lower courts on grounds that the medical service was the doctor and the patient's business and the treatment was not in pursuance of the doctor's duty to the ship or the ship's duty to the passenger. *De Zon v. American President Lines, Ltd.*, 318 U.S. at 666 n.2, 87 L. Ed. at 1070 n.2, 63 S. Ct. at 818 n.2. While the Supreme Court referred to these lower court holdings as being decided by "judges of great learning," the Court's ruminations on this point were clearly *dicta* as the plaintiff before them was employed as a seaman by the shipowner and was therefore protected under the Jones Act.

In the absence of Supreme Court precedent, we are compelled to consider the other federal court decisions which have addressed the issue of vicarious liability of shipowners for the actions of their shipboard doctors. As explained by the majority, in *Nietes v. American President Lines, Ltd.*, 188 F. Supp. 219 (N.D. Cal. 1959), *Fairley v. Royal Cruise Line Ltd.*, 1993 A.M.C. 1633 (S.D. Fla. 1993), and *Huntley v. Carnival Corp.*, 307 F. Supp. 2d 1372 (S.D. Fla. 2004), federal district courts held that a shipowner may be held liable for the negligent treatment of a passenger by a shipboard physician employed by the shipowner.

As the majority acknowledge, several federal courts have rejected the reasoning of these cases and have adhered to the rule that an on-board physician's negligence will not be imputed to the carrier. See *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988), *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033, 1042 (S.D.N.Y. 1969); *Di Bonaventure v. Home Lines, Inc.*, 536 F. Supp. 100, 103-04 (E.D. Pa. 1982). Also see *Cummiskey v. Chandris, S.A.*, 895 F.2d 107 (2d Cir. 1990), 1990 A.M.C. 1452 (1990) (and cases cited therein).

My concurrence with the majority's holding that the plaintiff's complaint alleging that Royal Carribean Cruises may be held vicariously liable for the negligence of its shipboard doctor states a claim sufficient to withstand defendant's motion to dismiss is dependent upon the fact that the doctor is an employee of Royal Carribean Cruises. Defendant has not asserted that the doctor in this case was an independent contractor. While the court in *Fairley v. Royal Cruise Line Ltd.*, 1993 A.M.C. at 1639-40, considered whether a theory of apparent agency might apply in cases where the doctor is not an employee of the carrier, thankfully, we do not have to consider this issue.

Finally, I agree with the majority that we should not limit our ruling on the certified questions to merely reviewing the questions themselves; rather, we should also consider the appropriateness of the order giving rise to the appeal. *Billerbeck v. Caterpillar Tractor Co.*, 292 Ill. App. 3d 350, 356-57 (1997), *appeal denied*, 176 Ill. 2d 570 (1998).