MARY E. O'BRIEN *vs.* CUNARD STEAMSHIP COMPANY.

Suffolk.   January 19, 1891. — September 1, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Carrier by Sea — Surgeon — Assault — Negligent Vaccination.*

If the surgeon of a foreign steamship, bringing immigrants to a port of this country where the quarantine regulations require vaccination as a prerequisite to landing, vaccinates one of them whose behavior indicates consent on her part, whatever her unexpressed feelings may be, he is justified in his act, and the ship-owner is not liable therefor as for an assault.

A ship-owner who provides a competent surgeon, whom the passengers may employ if they choose, is not liable for his negligence in the medical treatment of a passenger, either at common law or by the U. S. St. of August 2, 1882, § 5, which requires every vessel transporting immigrant passengers to carry a surgeon or

medical practitioner, " who shall be rated as such in the ship's articles, and who shall be provided with surgical instruments, medical comforts, and medicines," and makes the master of the vessel liable to a penalty for its violation.

In an action against a steamship company for assault by a ship's surgeon in vaccinating a steerage passenger brought to a port in this State, evidence consisting of the printed quarantine regulations of the port, to the effect that only such steerage passengers as held certificates from such surgeon that they had been vaccinated would be allowed to land without detention or vaccination, and of testimony that such regulations were carried out, was *held* to be properly admitted.

TORT, for an assault, and for negligently vaccinating the plaintiff, a steerage passenger on the steamship Catalonia. Trial in the Superior Court, before *Staples*, J., who ruled that, upon the evidence, the plaintiff could not maintain the action, and ordered a verdict for the defendant; and the plaintiff alleged exceptions. The nature of the evidence appears in the opinion.

*E. N. Hill & F. Cunningham*, for the plaintiff.

*G. Putnam*, (*T. Russell* with him,) for the defendant.

KNOWLTON, J. This case presents two questions : first, whether there was any evidence to warrant the jury in finding that the defendant, by any of its servants or agents, committed an assault on the plaintiff; secondly, whether there was evidence on which the jury could have found that the defendant was guilty of negligence towards the plaintiff. To sustain the first count, which was for an alleged assault, the plaintiff relied on the fact that the surgeon who was employed by the defendant vaccinated her on shipboard, while she was on her passage from Queenstown to Boston. On this branch of the case the question is whether there was any evidence that the surgeon used force upon the plaintiff against her will. In determining whether the act was lawful or unlawful, the surgeon's conduct must be considered in connection with the circumstances. If the plaintiff's behavior was such as to indicate consent on her part, he was justified in his act, whatever her unexpressed feelings may have been. In determining whether she consented, he could be guided only by her overt acts and the manifestations of her feelings. *Ford* v. *Ford*, 143 Mass. 577, 578. *McCarthy* v. *Boston & Lowell Railroad*, 148 Mass. 550, 552. It is undisputed that at Boston there are strict quarantine regulations in regard to the examination of immigrants, to see that they are protected from small-pox by vaccination, and that only those

persons who hold a certificate from the medical officer of the steamship, stating that they are so protected, are permitted to land without detention in quarantine or vaccination by the port physician. .It appears that the defendant is accustomed to have its surgeons vaccinate all immigrants who desire it, and who are not protected by previous vaccination, and give them a certificate which is accepted at quarantine as evidence of their protection. Notices of the regulations at quarantine, and of the willingness of the ship's medical officer to vaccinate such as needed vaccination, were posted about the ship, in various languages, and on the day when the operation was performed the surgeon had a right to presume that she and the other women who were vaccinated understood the importance and purpose of vaccination for those who bore no marks to show that they were protected. By the plaintiff's testimony, which in this particular is undisputed, it appears that about two hundred women passengers were assembled below, and she understood from conversation with them that they were to be vaccinated; that she stood about fifteen feet from the surgeon, and saw them form in a line and pass in turn before him; that he " examined their arms, and, passing some of them by, proceeded to vaccinate those that had no mark"; that she did not hear him say anything to any of them; that upon being passed by they each received a card and went on deck; that when her turn came she showed him her arm, and he looked at it and said there was no mark, and that she should be vaccinated; that she told him she had been vaccinated before and it left no mark; " that he then said nothing, that he should vaccinate her again "; that she held up her arm to be vaccinated; that no one touched her; that she did not tell him that she. did not want to be vaccinated; and that she took the ticket which he gave her certifying that he had vaccinated her, and used it at quarantine. She was one of a large number of women who were vaccinated on that occasion, without, so far as appears, a word of objection from any of them. They all indicated by their conduct that they desired to avail themselves of the provisions made for their benefit. There was nothing in the conduct of the plaintiff to indicate to the surgeon that she did not wish to obtain a card which would save her from detention at quarantine, and to be vaccinated, if necessary, for that

purpose. Viewing his conduct in the light of the circumstances, it was lawful; and there was no evidence tending to show that it was not. The ruling of the court on this part of the case was correct.

The plaintiff contends that, if it was lawful for the surgeon to vaccinate her, the vaccination, as alleged in the second count, was negligently performed. "There was no evidence of want of care or precaution by the defendant in the selection of the surgeon, or in the procuring of the virus or vaccine matter." Unless there was evidence that the surgeon was negligent in performing the operation, and unless the defendant is liable for this negligence, the plaintiff must fail on the second count.

Whether there was any evidence of negligence of the surgeon, we need not inquire, for we are of opinion that the defendant is not liable for his want of care in performing surgical operations. The only ground on which it is argued that the defendant is liable for his negligence is, that he is a servant engaged in the defendant's business, and subject to its control. We think this argument is founded on a mistaken construction of the duty imposed on the defendant by law. By the act of Congress of August 2, 1882, § 5, it is provided that "every steamship or other vessel carrying or bringing emigrant passengers, or passengers other than cabin passengers, exceeding fifty in number, shall carry a duly qualified and competent surgeon or medical practitioner, who shall be rated as such in the ship's articles, and who shall be provided with surgical instruments, medical comforts, and medicines proper and necessary for diseases and accidents incident to sea voyages, and for the proper medical treatment of such passengers during the voyage, and with such articles of food and nourishment as may be proper and necessary for preserving the health of infants and young children; and the services of such surgeon or medical practitioner shall be promptly given, in any case of sickness or disease, to any of the passengers, or to any infant or young child of any such passengers, who may need his services. For a violation of either of the provisions of this section the master of the vessel shall be liable to a penalty not exceeding two hundred and fifty dollars."

Under this statute it is the duty of ship-owners to provide a competent surgeon, whom the passengers may employ if they

choose, in the business of healing their wounds and curing their diseases. The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it. The work which the physician or surgeon does in such cases is under the control of the passengers themselves. It is their business, not the business of the carrier. They may employ the ship's surgeon, or some other physician or surgeon who happens to be on board, or they may treat themselves, if they are sick, or may go without treatment if they prefer; and if they employ the surgeon, they may determine how far they will submit themselves to his directions,. and what of his medicines they will take and what reject, and whether they will submit to a surgical operation or take the risk of going without it. The master or owners of the ship cannot interfere in the treatment òf the medical officer when he attends a passenger. He is not their servant, engaged in their business and subject to their control as to his mode of treatment. They do their whole duty if they employ a duly qualified and competent surgeon and medical practitioner, and supply him with all necessary and proper instruments, medicines, and medical comforts, and have him in readiness for such passengers as choose to employ him. This is the whole requirement of the statute of the United States applicable to such cases, and if, by the nature of their undertaking to transport passengers by sea, they are under a liability at the common law to make provision for their passengers in this respect, that liability is no greater. It is quite reasonable that the owners of a steamship used in the transportation of passengers should be required by law to provide a competent person to whom sick passengers can apply for medical treatment, and when they have supplied such a person, it would be unreasonable to hold them responsible for all the particulars of his treatment, when he is engaged in the business of other persons in regard to which they are powerless to interfere.

The reasons on which it is held, in the courts of the United States and of Massachusetts, that the owners are liable for the negligence of a pilot in navigating the ship, even though he is appointed by public agencies, and the master has no voice in the selection of him, do not apply to this case. *The China*, 7 Wall. 53, 67. *Yates* v. *Brown*, 8 Pick. 23. The pilot is en-

gaged in the navigation of the ship, for which, on grounds of public policy, the owners should be held responsible.   The business is theirs, and they have certain rights of control in regard to it.   They may determine when and how it shall be undertaken, and the master may displace the pilot for certain causes. But in England it has been held that even in such cases the owners are not liable.   *Carruthers* v. *Sydebotham*, 4 M. & S. 98. *The Protector*, 1 W. Robinson, 45.   *The Maria*, 1 W. Robinson, 95.

The view which we have taken of this branch of the case is fully sustained by a unanimous judgment of the Court of Appeals of New York, in *Laubheim* v. *De Koninglyke Stoomboot Co.* 107 N. Y. 228.   See also *Secord* v. *St. Paul, Minneapolis, & Manitoba Railway*, 18 Fed. Rep. 221 ; *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432.   We are of opinion that on both parts of the case the rulings at the trial were correct.

The evidence which was excepted to, consisting of the printed quarantine regulations above referred to, and of testimony that only the steerage passengers holding a surgeon's certificate were allowed to land, all others being vaccinated by the port physician or detained at quarantine, was rightly admitted.

*Exceptions overruled.*