953 So.2d 461 (2007)
CARNIVAL CORPORATION, Petitioner,
v.
Darce CARLISLE, Respondent.
No. SC04-393.
Supreme Court of Florida.
February 15, 2007.
Rehearing Denied March 27, 2007.
*462 Rodolfo Sorondo, Jr., and Lenore C. Smith of Holland and Knight, LLP, Miami, FL; and Jeffrey B. Maltzman and Darren W. Friedman of Kaye, Rose and Maltzman, LLP, Miami, FL, for Petitioner.
David H. Pollack of the Law Office of David H. Pollack, LLC, Miami, FL; and Charles Lipcon of Lipcon, Margulies and Alsina, P.A., Miami, FL, for Respondent.
John Campbell and Richard Malafy of Campbell and Malafy, Coral Gables, Florida, on behalf of the International Council of Cruise Lines; and Robert D. Peltz of McIntosh, Sawran, Peltz, Cartaya and Pettruccelli, P.A., Miami, FL, on behalf of the *463 Florida Maritime Lawyer's Association, as Amici Curiae.
QUINCE, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
WHETHER A CRUISE LINE IS VICARIOUSLY LIABLE FOR THE MEDICAL MALPRACTICE OF THE SHIPBOARD DOCTOR, COMMITTED ON A SHIP'S PASSENGER?
Carlisle v. Carnival Corp., 864 So.2d 1, 8 (Fla. 3d DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer the certified question in the negative.

Factual and Procedural History
The material facts, taken from the Third District's decision, are as follows:
In March 1997, the Carlisle family embarked on a cruise aboard the Carnival cruise ship, the Ecstasy. During the cruise, 14 year old Elizabeth Carlisle felt ill with abdominal pain, lower back pain and diarrhea and was seen several times in the ship's hospital by the ship's physician, Dr. Mauro Neri. Over the course of several days Dr. Neri repeatedly advised the Carlisles that Elizabeth was suffering from the flu, assured them in response to their questions that it was not appendicitis, and provided antibiotics. Ultimately, the Carlisle family decided to discontinue their cruise and returned home to Michigan where Elizabeth was diagnosed as having a ruptured appendix. Her appendix was removed, and as a result of the rupture and subsequent infection, Elizabeth was rendered sterile.
Her parents filed the instant suit against Carnival and Dr. Neri, alleging, inter alia, that the doctor had acted negligently in his treatment of Elizabeth and that Carnival should be held vicariously liable for such negligence under theories of agency and apparent agency, and that Carnival was negligent in the hiring of Dr. Neri. The trial court entered summary judgment in favor of Carnival and this appeal followed.
Id. at 2. Third District found that the issue had never been addressed by this Court and concluded that, of the conflicting precedents on the issue, Nietes v. American President Lines, Ltd., 188 F.Supp. 219 (N.D.Cal.1959), provided the better-reasoned rationale for resolving the issue of a cruise liner's liability for the medical negligence of its shipboard doctor.
The district court found that because the record indicated control by Carnival over the doctor's medical services, the question of agency had not been refuted. The court held, "[R]egardless of the contractual status ascribed to the doctor, for purposes of fulfilling the cruise line's duty to exercise reasonable care, the ship's doctor is an agent of the cruise line whose negligence should be imputed to the cruise line." Id. at 7. The court reversed the summary judgment in favor of Carnival, remanded the case for further proceedings consistent with its holding, and certified to this Court the above-stated question as one of great public importance.

ANALYSIS

Applicable Law Under the Concurrent Jurisdiction of Maritime Torts
The parties in this case agree that the instant action, involving the malpractice of a doctor on the high seas, falls within the purview of federal admiralty jurisdiction. See Everett v. Carnival Cruise Lines, 912 F.2d 1355 (11th Cir. 1990); Doe v. Celebrity Cruises, 145 *464 F.Supp.2d 1337 (S.D.Fla.2001). Under the "saving to suitors" clause of the Judiciary Act of 1789, currently codified as 28 U.S.C. § 1333(1) (2000), state courts have concurrent jurisdiction with the federal courts as to in personam claims based on maritime torts.[1] Both federal and state courts must apply federal maritime law that directly addresses the issues at hand. See Greenly v. Mariner Mgmt. Group, Inc., 192 F.3d 22, 25-26 (1st Cir.1999) (citing Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 320-21, 75 S.Ct. 368, 99 L.Ed. 337 (1955)).
Federal maritime law is an amalgamation of federal legislation, federal common law, and state maritime law. A court sitting in admiralty jurisdiction "mayand shouldresort to state law when no federal rule covers a particular situation." Greenly, 192 F.3d at 26. Indeed, there is an established line of United States Supreme Court precedent recognizing that maritime law may be supplemented or modified by the states where the supplement or modification does not conflict with an essential feature of exclusive federal jurisdiction.[2] State courts are specifically empowered to create new remedial maritime law within those narrow constraints. In the instant case, however, there are federal decisions and established rules of law that directly address the liability of a ship owner for the alleged negligence of the ship's physician.

Controlling Precedent in Maritime Law
This Court must determine whether the Third District Court of Appeal could follow the holding in Nietes v. American President Lines, Ltd., 188 F.Supp. 219 (N.D.Cal.1959), or whether the Third District was bound to follow the other precedent as outlined in Barbetta v. S/S Bermuda Star, 848 F.2d 1364 (5th Cir.1988). Carnival and Carlisle differ in their views as to whether the district court was required to follow the rule of maritime law stated in Barbetta v. S/S Bermuda Star and espoused by the majority of federal courts that have ruled upon this liability issue. Neither the United States Supreme Court nor this Court has directly ruled on the issue of whether a ship owner may be held vicariously liable for the alleged negligent provision of medical care to a passenger by its shipboard physician. However, *465 a number of federal district courts and courts of appeal have ruled on this issue.[3] The question thus becomes whether the Third District was bound to follow the rule of law on this issue as espoused by the majority of such cases. In other words, the questions that must be answered are whether there is a uniform federal position on the issue and whether application of the Nietes rule would violate the rule of uniformity.
Generally, state courts are not required to follow the decisions of intermediate federal appellate courts on questions of federal law. "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 220-221, 51 S.Ct. 453, 75 L.Ed. 983 (1931), there is no similar obligation with respect to decisions of the lower federal courts." Abela v. Gen. Motors Corp., 469 Mich. 603, 677 N.W.2d 325, 327 (2004), cert. denied, 543 U.S. 870, 125 S.Ct. 98, 160 L.Ed.2d 117 (2004). Decisions of numerous state supreme courts have similarly held that state courts are under no obligation to follow the decisions of the lower federal courts. See, e.g., Skelly Oil Co. v. Jackson, 194 Okla. 183, 148 P.2d 182, 185 (1944) ("[D]ecisions of lower federal courts are persuasive and usually followed unless a conflict between the decisions of such courts makes it necessary to choose between one or more announced interpretations.").
Under federal maritime law a state may, in exercising its in personam[4] jurisdiction in maritime cases, adopt such remedies as it sees fit so long as it does not make changes in the substantive law.[5] This rule is violated when the state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." American Dredging Co. v. Miller, 510 U.S. 443, 447, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (quoting Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)). With regard to the need for harmony within the field of maritime law in the absence of controlling federal legislation, the United States Supreme Court specifically held that "[u]niformity is required only when the essential features of an exclusive federal jurisdiction are involved." *466 Just v. Chambers, 312 U.S. 383, 392, 61 S.Ct. 687, 85 L.Ed. 903 (1941).

Harmony and Uniformity of Maritime Law
Carnival asserts that, by following Nietes v. American President Lines, Ltd., 188 F.Supp. 219 (N.D.Cal.1959), the Third District has crafted a dramatic change in settled federal maritime law and thus violated the long-standing principle of uniformity. More specifically, Carnival asserts that cases following Barbetta, with Nietes as the lone exception, have established a settled rule of maritime law that a ship owner may not be held vicariously liable for the negligence of a shipboard physician.
In Barbetta v. S/S Bermuda Star, 848 F.2d 1364 (5th Cir.1988), the Fifth Circuit Court of Appeals addressed the issue of whether a ship owner could be held liable to a passenger under a theory of respondeat superior for the medical negligence of the ship's doctor. The ship owners asserted that, because the doctor was not their servant or agent, they could not be held vicariously liable for his negligent actions under general maritime law. The ship owners also proffered a provision of the ticket contract that disclaimed all liability for the negligence of the physician. The trial court noted that the general maritime law offered no completely consistent answer regarding the vicarious liability of a ship owner to a passenger for alleged negligent medical treatment by the ship's doctor, but it determined that it was unnecessary to decide the case on that theory. Id. at 1367. The trial court reasoned that, regardless of the possible existence of a master-servant relationship, the contractual limitation of liability on the ticket was not against public policy and therefore liability could not be premised upon a theory of respondeat superior. Id.
On appeal, the Fifth Circuit concluded that it must first determine whether maritime law permits vicarious claims. The court noted that the case raised the following question of law, "Assuming the doctor was negligent in performing his duties, would the doctrine of respondeat superior impose liability on the defendants?" Id. at 1368.[6] The court concluded that the doctrine does not impose liability upon a ship owner and recited the general rule:
Although neither the Supreme Court, this court, nor any district court in this circuit has ruled on the question, we are not without guidance. An impressive number of courts from many jurisdictions have, for almost one hundred years, followed the same basic rule: When a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier.

Id. at 1369 (emphasis added). The court cited to a line of cases from 1887 to 1982, which held that the carrier was only liable for its own possible negligence in the hiring of the physician.
*467 The Barbetta court stated its rationale for the rule in two often-repeated justifications. First, the carrier does not have the capacity to control the relationship between the physician and the passenger since that relationship is under the control of the passenger. See id. (citing O'Brien v. Cunard S.S. Co., 154 Mass. 272, 28 N.E. 266, 267 (1891)). Second, "[a] shipping company is not in the business of providing medical services to passengers; it does not possess the expertise requisite to supervise a physician or surgeon carried on board a ship as a convenience to passengers." Id. (quoting Amdur v. Zim Israel Navigation Co., 310 F.Supp. 1033, 1042 (S.D.N.Y.1969)).
The Barbetta court reasoned that the "justifications for the general rule are tied to the concept of control" because "respondeat superior liability is predicated upon the control inherent in a master-servant relationship." Id. at 1370. In examining the potential for control by a ship owner, the Barbetta court remarked only that numerous earlier courts had found that the carrier or ship owner lacked the "expertise to meaningfully evaluate and, therefore, control a doctor's treatment of his patients" and "the power, even if it had the knowledge, to intrude into the physician-patient relationship." Id. at 1371. The Barbetta court consequently declared, "a carrier cannot exercise control over the ship's doctor as he practices medicine" and therefore held that a carrier could not be held liable for the doctor's negligence under a theory of respondeat superior. Id. (emphasis added). However, after reciting precedent that predicates the application of vicarious liability upon the existence of control, the Barbetta court itself avoided any analysis of record evidence relevant to control. Instead, it flatly declared and accepted the broad rule "that general maritime law does not impose liability under the doctrine of respondeat superior upon a carrier or ship owner for the negligence of a ship's doctor who treats the ship's passengers." Id. at 1372.
The concept of control, however, is also the very essence of the rationale underlying the Nietes decision and the decision by the Third District in this case. Analyzing the issue of control, the court in Nietes reached a different result from the Barbetta court and decisions in earlier cases. In Nietes, the injured passenger alleged that the ship's doctor and nurses were employees of the shipping company. The Nietes court found this allegation sufficient to state a cause of action under a theory of vicarious liability and denied the company's motion to dismiss. In determining that the claim was legally viable, the court acknowledged the "ancient rule" that precluded liability based upon the independent contractor status of the physician. Nietes, 188 F.Supp. at 220. However, the court examined specific aspects of the relationship between the physician and the ship owners to conclude that the physician was an employee. The court said:
It is our opinion that, where a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of respondeat superior at least, in the nature of an employee or servant for whose negligent treatment of a passenger a shipowner may be held liable. The same would be true, a fortiori, as to a ship's nurses.
Id.
The Barbetta court recognized that the rule actually adopted by Nietes "imposes liability only when the carrier has some control over the doctor." Barbetta, 848 *468 F.2d at 1370. But rather than analyze the particular relationship between the parties to determine whether aspects of control could in fact exist, the Barbetta decision relied upon the factual conclusions of earlier maritime cases to support the general maritime rule. See id. at 1369-71. For example, O'Brien v. Cunard Steamship Co., 154 Mass. 272, 28 N.E. 266 (1891), cited by Barbetta and a number of maritime decisions, holds that a ship owner's sole duty is to provide a duly qualified and competent surgeon and that the ship owner is not vicariously liable to a passenger for the negligence of the shipboard surgeon. See id. at 267. The passenger in O'Brien also alleged that the physician was a servant of the ship owner and subject to its control. The rationale for the Barbetta decision is found in the O'Brien court's decree that "[t]he master or owners of the ship cannot interfere in the treatment of the medical officer when he attends a passenger. He is not their servant, engaged in their business, and subject to their control as to his mode of treatment." Id. (emphasis added). The O'Brien court, however, analyzed and construed the duty of the ship owner under an 1882 act of Congress that was later repealed.[7] The court further asserted, without citation to any precedent, that any duty under the common law would be no greater than that under the statute. Id. at 267. Citing to Laubheim v. Netherland Steamship Co., 107 N.Y. 228, 13 N.E. 781 (1887), as support for its holding under the statute, the O'Brien court concluded that it was unreasonable to hold the ship owners liable when they were required by law to keep a physician on board but were "powerless to interfere" in the relationship between physician and patient. Id.
Laubheim was decided after the Act of 1882 took effect, although the tort appears to have accrued beforehand. The court found that there was no evidence of underlying negligent treatment by the physician, but it further stated that a ship owner could only be held liable where it failed to select a reasonably competent physician. Id. at 781. The court did not analyze what, if any, control the ship owner may have asserted over its physician, but instead cited three decisions as support for its holding. One case involved a railroad's liability for the negligence of its physician, Secord v. St. Paul Minneapolis & Manitoba Ry. Co., 18 F. 221 (C.C.D.Minn.1883), one involved a railroad's liability for the negligence of a non-medical employee under the fellow-servant doctrine, Chapman v. Erie Ry. Co., 55 N.Y. 579 (1874), and one involved the liability of a public charity hospital for the negligence of its physician, McDonald v. Mass. Gen. Hosp., 120 Mass. 432 (1876).
In The Great Northern, 251 F. 826 (9th Cir.1918), the court noted that the appellant relied expressly upon the 1882 Act of Congress, but the court decided the question under both the Act and the common law. See id. at 830. The court cited five cases in support of its decision that the ship owner was not vicariously liable for the negligence of the on-board physician, including the two earlier decisions in O'Brien and Laubheim. The court liberally quoted the language from O'Brien as to the ship owner's presumptive lack of control but ultimately held that the ship owner's *469 statutory duty was met. Id. at 831-32.
In De Zon v. American President Lines, Ltd., 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943), the United States Supreme Court also cited to the litany of early decisions which held that the ship owner could not be held vicariously liable for the negligence of the shop's doctor. Though De Zon decided only that the ship owner could be held vicariously liable under the Jones Act for harm to the seaman caused by the negligence of the ship's doctor, by footnote, the Supreme Court cited several of the passenger cases above. It noted that ship owners have not been found liable to passengers because the medical treatment was business between the doctor and the passenger rather than fulfillment of the doctor's duty to the ship. See id. at 666 n. 2, 63 S.Ct. 814. However, the Supreme Court found that the distinction between passenger cases and seaman cases turns upon issues of control, and stated, "in this case the physician was not in his own or the seaman's control; he was an employee and as such subject to ship discipline and the master's orders." Id. at 668, 63 S.Ct. 814.
The court in Amdur v. Zim Israel Navigation Co., 310 F.Supp. 1033 (S.D.N.Y. 1969), supplementing Israeli law with the general maritime law, also relied upon the general rule of law recited in these earlier decisions and found that "a shipping company is not in the business of providing medical services to passengers; it does not possess the expertise requisite to supervise a physician or surgeon carried on board a ship as a convenience to passengers." Id. at 1042. Although the court recognized the applicability of Nietes to some species of passengers' vicarious liability claims where it stated, "This rationale, while perhaps viable for the specific fact pattern in Nietes, is not sound as a general rule," it strongly criticized the Nietes decision. Id. at 1042. The Amdur court appropriately took issue with the concept that a shipboard physician became subject to the control of the ship owner simply through mere employment, and it declared that neither a ship's master nor a shore-bound chief surgeon could occupy sufficient control over a shipboard doctor to warrant imputation of liability. See id. at 1042-43. Ultimately, however, the court held only that the facts before it failed to indicate any negligence by the physician, thus obviating the application of respondeat superior. Id. at 1046.
In Di Bonaventure v. Home Lines, Inc., 536 F.Supp. 100 (E.D.Pa.1982), an injured passenger brought a vicarious liability claim against the ship owner, contending that the ship's physician was an employee of the ship owner. The ship owner claimed that the physician was an independent contractor. The court emphasized that the "respondeat superior theory is predicated upon the control inherent in a master-servant relationship." Id. at 104. Without analysis of any fact relevant to the issue of control, the court simply quoted Amdur for the general proposition that a ship's doctor is an independent medical expert and held that vicarious liability would not lie because such control was lacking. Id. at 103-04.
Despite the long line of precedent reciting that a ship owner may not be held vicariously liable for the medical negligence of its shipboard doctor, the Third District in this case followed Nietes, which was then the sole decision to hold that liability may be imputed to a ship owner under a theory of respondeat superior for the negligence of its shipboard doctor upon a passenger. See Nietes, 188 F.Supp. at *470 220.[8] The position espoused by the Third District has some appeal because much has changed in the world in the one hundred years since the earlier courts held ship owners immune from such claims. As the court below observed, "While the presence of an onboard physician is not required by law, the practical realities of the competitive cruise industry, and the reasonably anticipated risks of taking a small city of people to sea for days at a time, all but dictate a doctor's presence." Carlisle v. Carnival Corp., 864 So.2d 1, 6 (Fla. 3d DCA 2003). Moreover, modern means of communication make it possible for the actions of the shipboard doctor to be controlled and supervised by a doctor thousands of miles away.
We are also aware of cases that have been decided since the district court's decision that have likewise followed the Nietes rule. In Huntley v. Carnival Corp., 307 F.Supp.2d 1372 (S.D.Fla.2004), the passenger argued that the ship owner was vicariously liable, under a theory of actual or apparent agency, for the alleged medical malpractice of the ship's physician. The federal district court analyzed the rationale underlying the Third District's opinion in Carlisle, as well as the opinions in Barbetta, Nietes, and Fairley, and concluded that the Carlisle decision appeared to be "thorough and well-reasoned." Huntley, 307 F.Supp.2d at 1374. The Huntley court denied the ship owner's motion to dismiss the claim for vicarious liability, finding it was unable to conclude under existing law that the passengers would be unable to prove a set of facts entitling them to relief. Id. at 1375. Similarly, other recent maritime decisions have permitted a passenger's vicarious liability action for the alleged negligent acts of the ship's physician to withstand the ship owner's motion to dismiss. See Doonan v. Carnival Corp., 404 F.Supp.2d 1367, 1371-72 & n. 2 (S.D.Fla.2005) (dismissing passenger's claim based upon actual agency where the passenger's allegations were insufficient to justify deviation from the majority rule, but declining to dismiss vicarious liability claim based upon apparent agency because "despite Barbetta, a Plaintiff may be able to sustain an apparent agency claim"); Mack v. Royal Caribbean Cruises, Ltd., 361 Ill.App.3d 856, 297 Ill. Dec. 593, 838 N.E.2d 80, 91 (2005) (finding that federal maritime law is unsettled and affirming the denial of the ship owner's motion to dismiss in accord with the holdings of Nietes, Huntley, and Fairley), appeal denied, 218 Ill.2d 542, 303 Ill.Dec. 3, 850 N.E.2d 808 (Ill.2006), and cert. denied, ___ U.S. ___, 127 S.Ct. 350, 166 L.Ed.2d 44 (2006).
As earlier stated, we find merit in the plaintiff's argument and the reasoning of the district court. However, because this is a maritime case, this Court and the Florida district courts of appeal must adhere to the federal principles of harmony and uniformity when applying federal maritime law. At the time the instant case was decided by the Third District, with the exception of Nietes, the federal maritime law uniformly held that a ship owner is not vicariously liable for the medical negligence of the shipboard physician.

*471 CONCLUSION
Based on the foregoing, we quash the decision of the district court and hold that the ship owner is not vicariously liable under the theory of respondeat superior for the medical negligence of the shipboard physician.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, and CANTERO, JJ., concur.
ANSTEAD and BELL, JJ., concur in result only.
NOTES
[1] Though maritime cases traditionally fell under admiralty jurisdiction in any case where the alleged tort took place upon a vessel in navigable waters, current jurisprudence requires that the tort satisfy both the "locality" prong and the "maritime connection" prong of an admiralty jurisdiction test before maritime law will apply. In determining whether the tort has a substantial connection to traditional maritime activity, the United States Supreme Court in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1994), held that a court must assess whether the "incident involved was of a sort with the potential to disrupt maritime commerce." Id. at 538, 115 S.Ct. 1043.
[2] "[T]he State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation." Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) (reversing the Fifth Circuit Court of Appeals in a maritime tort action and affirming the application of Florida law, which provided for the survival of a cause of action against a deceased ship owner/tortfeasor because application of the state survival of actions rule was not repugnant to a characteristic feature of maritime law and was not violative of the uniformity rule). Furthermore, there is "a broad recognition of the authority of the States to create rights and liabilities with respect to conduct within their borders, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction." Id. at 391, 61 S.Ct. 687.
[3] See, e.g., Cummiskey v. Chandris, S.A., 895 F.2d 107, 108 (2d Cir.1990); Barbetta, 848 F.2d at 1367; The Korea Maru, 254 F. 397, 399 (9th Cir.1918); Nanz v. Costa Cruises, Inc., 1991 A.M.C. 48, 49 (S.D.Fla.1990), aff'd, 932 F.2d 977 (11th Cir.1991); Gillmor v. Caribbean Cruise Line, Ltd., 789 F.Supp. 488, 491 (D.P.R.1992); Hilliard v. Kloster Cruise, Ltd., 1991 A.M.C. 314, 316-17 (E.D.Va.1990); Di Bonaventure v. Home Lines, Inc., 536 F.Supp. 100, 103-04 (E.D.Penn.1982); Bowns v. Royal Viking Lines, Inc., 1977 A.M.C. 2159 (S.D.N.Y.1977); Churchill v. United Fruit Co., 294 F. 400, 402 (D.Mass.1923); The Napolitan Prince, 134 F. 159, 160 (E.D.N.Y.1904).
[4] The United States Supreme Court in The Moses Taylor, 4 Wall. 411, 71 U.S. 411, 431, 18 L.Ed. 397 (1866), held that an in rem proceeding against a vessel is purely an admiralty proceeding and is within the exclusive jurisdiction of the federal courts. See also Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 124, 44 S.Ct. 274, 68 L.Ed. 582 (1924) ("A state may not provide a remedy in rem for any cause of action within the admiralty jurisdiction.").
[5] See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 402, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (stating that "federal admiralty law should be `a system of law coextensive with, and operating uniformly in, the whole country'") (quoting The Lottawanna, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1874)); Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 902 (11th cir.2004) ("[T]he purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law.").
[6] By footnote, the Fifth Circuit reluctantly acknowledged the application of 46 U.S.C. App. § 183c, which prohibits vessels transporting passengers from disclaiming liability for the negligence of its servants which causes death or bodily injury. Curiously, the court excepted the ticket's disclaimer from the statute, characterizing the ticket language as "merely an accurate restatement of the principles of general maritime law which we have reviewed above." Id. at 1372 n. 2.
[7] The Act of Congress of August 2, 1882, 22 Stat. 186, repealed by Pub.L. 98-89, § 4(b), 97 Stat. 599-600 (1983), set forth the duty of late nineteenth century carriers to employ a competent and qualified physician for the benefit of the passengers. The court in O'Brien interpreted that duty to include both hiring a competent physician and providing the necessary instruments and medical supplies that the physician would need in order to exercise the craft of providing medical treatment. O'Brien, 28 N.E. at 267.
[8] The Southern District of Florida in Fairley v. Royal Cruise Line, Ltd., 1993 A.M.C. 1633 (S.D.Fla.1993), denied a ship owner's motion to dismiss without adopting the rule of Nietes. While acknowledging that the majority rule precludes a passenger from suing the ship owner on the theory of respondeat superior, the court held the plaintiff could conceivably prevail on other theories, such as agency by estoppel.