# Supreme Court of Florida

_____

No. SC20-1167
_____

**AIRBNB, INC.,**
Petitioner,

vs.

**JOHN DOE, et al.,**
Respondents.

March 31, 2022

POLSTON, J.

Airbnb, Inc. (Airbnb) seeks review of the Second District Court of Appeal's decision in _Doe v. Natt_, 299 So. 3d 599, 610 (Fla. 2d DCA 2020) (certifying conflict).[1] The issue before this Court involves who decides arbitrability—"whether a dispute is subject to a contract's arbitration provision"—an arbitrator or a judge. _Id._ at 600. Specifically, we address whether Airbnb's Terms of Service that incorporate by reference the American Arbitration Association (AAA) Rules that expressly delegate arbitrability determinations to

---

1. We have jurisdiction. _See_ art. V, § 3(b)(4), Fla. Const.

an arbitrator constitute "clear and unmistakable" evidence of the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitrability. As explained below, we hold that under the Federal Arbitration Act (FAA), it does and quash the Second District's decision in *Natt*.

## I. BACKGROUND

The Second District set forth the following pertinent facts:

> A Texas couple, who will be referred to as John and Jane Doe to preserve their confidentiality, decided to vacation in Longboat Key. Through a business, Airbnb, Inc. (Airbnb), they located a condominium unit online that was available for a short-term rental in the Longboat Key area. Using Airbnb's website, Mr. and Mrs. Doe rented the unit for a three-day stay in May of 2016.
>
> The condominium unit was owned by Wayne Natt. Unbeknownst to the Does, Mr. Natt had installed hidden cameras throughout the unit. The Does allege that Mr. Natt secretly recorded their entire stay in his unit, including some private and intimate interactions. After they learned of Mr. Natt's recordings, the Does filed a complaint in the circuit court of Manatee County, naming both Mr. Natt and Airbnb as defendants. Their complaint included claims of intrusion against Mr. Natt, constructive intrusion against Airbnb, and loss of consortium against both Mr. Natt and Airbnb. In their constructive intrusion claims, the Does alleged that Airbnb failed to warn them of past invasions of privacy that had occurred at other properties rented through Airbnb. They also alleged that Airbnb failed to ensure that Mr. Natt's property did not contain electronic recording devices.

- 2 -

In response to the Does' complaint, Airbnb filed a motion to compel arbitration. Airbnb argued that the Does' claims were subject to arbitration under Airbnb's Terms of Service, which the Does agreed to be bound to pursuant to a "clickwrap" agreement[2] they had entered when they first created their respective Airbnb accounts online.

*Natt*, 299 So. 3d at 600-01 (footnote omitted).

Airbnb's Terms of Service began with the following statement:

PLEASE READ THESE TERMS OF SERVICE CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES AND OBLIGATIONS. THESE INCLUDE VARIOUS LIMITATIONS AND EXCLUSIONS, A CLAUSE THAT GOVERNS THE JURISDICTION AND VENUE OF DISPUTES, AND OBLIGATIONS TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS.

The "Dispute Resolution" clause, by which Airbnb seeks to compel arbitration, appeared in the Terms of Service and set forth the following:

**Dispute Resolution**

You and Airbnb agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Services or use of the

2. The Second District defined a clickwrap agreement "as one that is entered online by proposing contractual terms and conditions of service to a user, who then indicates his or her assent to the terms and conditions by clicking an 'I agree' box." *Doe v. Natt*, 299 So. 3d 599, 601 n.2 (Fla. 2d DCA 2020).

- 3 -

Site or Application (collectively, "**Disputes**") will be settled by binding arbitration, except that each party retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights. You acknowledge and agree that you and Airbnb are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Further, unless both you and Airbnb otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this specific paragraph is held unenforceable, then the entirety of this "Dispute Resolution" section will be deemed void. Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of these Terms.

Arbitration Rules and Governing Law. The arbitration will be administered by the American Arbitration Association ("**AAA**") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "**AAA Rules**") then in effect, except as modified by this "Dispute Resolution" section. (The AAA Rules are available at www.adr.org/arb_med or by calling the AAA at 1-800-778-7879.) The Federal Arbitration Act will govern the interpretation and enforcement of this section.

Rule 7 of the AAA Rules[3] provided: "The arbitrator shall have the

power to rule on his or her own jurisdiction, including any

---

3. Before the Does filed suit, the AAA reorganized the relevant rules. The reorganization caused the Consumer Arbitration Rules

- 4 -

objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim.*" (Emphasis added.)

After conducting a hearing on Airbnb's motion to compel arbitration, the circuit court granted the motion and stayed the lawsuit pending arbitration. *Natt*, 299 So. 3d at 602. The circuit court found "that the parties entered an express agreement which incorporated the AAA rules, and that [it was] therefore bound to submit the issue of arbitrability to the arbitrator." *Id.*

On appeal, the Does argued that the circuit court erred in compelling arbitration because the Terms of Service did not clearly and unmistakably evidence the parties' intent to delegate questions of arbitrability to an arbitrator. In a 2-to-1 decision, the Second District reversed the circuit court's order, holding "that the clickwrap agreement's arbitration provision and the AAA rule it references that addresses an arbitrator's authority to decide arbitrability did not, in themselves, arise to 'clear and

---

to become a standalone set of rules instead of a supplement to the Commercial Arbitration Rules. The relevant AAA Rule was relocated from Rule 7 to Rule 14 without any alterations to its language or this Court's legal analysis.

unmistakable' evidence that the parties intended to remove the court's presumed authority to decide such questions." *Id.* at 609-10 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.")). The Second District concluded that the agreement contained "an arguably permissive and clearly nonexclusive conferral of an adjudicative power to an arbitrator, found within a body of rules that were not attached to the agreement, that itself did nothing more than identify the applicability of that body of rules if an arbitration is convened." *Id.* at 609. The Second District reasoned that "the provision Airbnb relies upon is two steps removed from the agreement itself, hidden within a body of procedural rules, and capable of being read as a permissive direction. It is at best ambiguous." *Id.*

The Second District explained that the AAA rules "were referenced in the clickwrap agreement as a generic body of procedural rules, and that reference was limited to how 'the arbitration' was supposed to be 'administered,'" which the Second District interpreted to mean "an arbitration that is actually

commenced." *Id.* at 606. The Second District further explained that "the reference to the AAA Rules was broad, nonspecific, and cursory" because it "simply identified the entirety of a body of procedural rules." *Id.* The Second District also criticized the AAA Rule itself, explaining that the "rule confers an adjudicative power upon the arbitrator, but it does not purport to make that power exclusive. Nor does it purport to contractually remove that adjudicative power from a court of competent jurisdiction." *Id.* at 607.

The Second District acknowledged that its "decision may constitute something of an outlier in the jurisprudence of arbitration," citing numerous federal cases that "have concluded that an arbitration rule that confers a general authority on an arbitrator to decide questions of arbitrability, when incorporated into an agreement, evinces a sufficiently clear and unmistakable intent to withdraw the issue from a court's consideration." *Id.* at 607-08. The Second District also certified conflict with the Fifth District Court of Appeal's decision in *Reunion West Development Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) (concluding that "[w]hen . . . parties explicitly incorporate

rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"), and further disagreed with the Third District Court of Appeal's decision in *Glasswall, LLC v. Monadnock Construction, Inc.*, 187 So. 3d 248, 251 (Fla. 3d DCA 2016) (holding "that by incorporating the Construction Industry Rules of the AAA which make the issue of arbitrability subject to arbitration, there [was] 'clear and unmistakable' evidence of [the parties'] intent to submit the issue of arbitrability to an arbitrator"). *Natt*, 299 So. 3d at 608, 610.

Judge Villanti dissented "from the majority's outlier determination that the clickwrap agreement used by Airbnb did not exhibit an unmistakable intent to assign the issue of arbitrability to the arbitrator." *Id.* at 610 (Villanti, J., dissenting). Specifically, Judge Villanti disagreed "with the majority's assertion that '[p]lainly, the agreement's reference to the AAA Rules and AAA's administration addresses an arbitration that is actually commenced.'" *Id.* at 610-11. The dissent explained: "The question of whether a claim is arbitrable must, by necessity, be determined before the commencement of arbitration. Thus, [the AAA Rule] can

- 8 -

only apply at the outset of a claim, not after the arbitration has already commenced." *Id.* at 611. Also important to the dissent was addressing "the majority's attempt to minimize the scope of [the AAA Rule] because, the majority says, it does not give the arbitrator the *exclusive* power to decide arbitrability." *Id.* Judge Villanti explained that "[t]his ignores the obvious: the power to decide *is* the power to decide," and "[t]o contend that the absence of the term 'exclusive' (or words to that effect) in relation to the arbitrator gives exclusive power to the trial court sub silentio to make that decision is . . . a stretch too far." *Id.* Ultimately, Judge Villanti "conclude[d] that the incorporation by reference of [the AAA Rule] into a contract comprises 'clear and unmistakable evidence' of the parties' agreement to arbitrate arbitrability." *Id.* at 612.

## II. ANALYSIS

Airbnb argues that incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability.[4] The

---

4. We review this issue de novo. *See Hernandez v. Crespo*, 211 So. 3d 19, 24 (Fla. 2016).

circuit court agreed with Airbnb and compelled arbitration and stayed the lawsuit pending arbitration. We agree with Airbnb and the circuit court and quash the Second District's decision.

The parties agree that issues of arbitrability are governed by the FAA, as required by the contract. *See* 9 U.S.C. §§ 1-16. Federal substantive law controls arbitration issues arising under contracts governed by the FAA, including in state court. *See Preston v. Ferrer*, 552 U.S. 346, 349 (2008). In reviewing issues of federal law, this Court is bound by decisions of the United States Supreme Court but may consider lower federal court decisions as advisory. *See Carnival Corp. v. Carlisle*, 953 So. 2d 461, 465 (Fla. 2007).

Under the FAA, arbitration is a creature of contract: an arbitrator may resolve "only those disputes . . . that the parties have agreed to submit to arbitration." *First Options*, 514 U.S. at 943; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (noting that the FAA requires courts to "give effect to the contractual rights and expectations of the parties," parties who are free to structure their arbitration agreement regarding how the arbitration is to be done and what it will cover (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S.

468, 479 (1989))). The United States Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability," courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The majority in the Second District's decision below properly characterized its opinion as an "outlier." *Natt*, 299 So. 3d at 607. All of the federal circuit courts of appeal to consider the issue have consistently agreed that incorporation by reference of arbitral rules into an agreement that expressly empower an arbitrator to resolve questions of arbitrability clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability. *See In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 243 (11th Cir. 2021); *Blanton v. Domino's Pizza Franchising*

- 11 -

*LLC*, 962 F.3d 842, 845-46 (6th Cir. 2020); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006), *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524; *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). The United States Court of Appeals for the Seventh Circuit, which has not ruled directly on this issue, has held that an "agreement of the parties to have any arbitration governed by the rules of the AAA incorporated those rules into the agreement." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976).

This federal precedent has explained that when an agreement incorporates a set of arbitral rules, such as the AAA Rules, those rules become part of the agreement. And where those rules specifically empower the arbitrator to resolve questions of arbitrability, incorporation of the rules is sufficient to clearly and unmistakably evidence the parties' intent to empower an arbitrator to resolve questions of arbitrability. And as the Supreme Court has emphasized, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528.

Here, Airbnb and the Does clearly and unmistakably agreed that an arbitrator decides questions of arbitrability. Airbnb's Terms of Service explicitly incorporate by reference the AAA Rules: "The arbitration will be administered by the American Arbitration Association ('**AAA**') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the '**AAA Rules**') then in effect." The Terms of Service also provide a hyperlink to the AAA Rules and a phone number for the AAA. Further, the incorporated AAA Rules specifically provide

that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim.*" (Emphasis added.) The Terms of Service incorporate the AAA Rules, and the express language in the AAA Rules empowers the arbitrator to decide arbitrability. Accordingly, consistent with the persuasive and unanimous federal circuit court precedent, we conclude that incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability.

Notably, most federal circuit courts to address whether the incorporated AAA Rules meet the "clear and unmistakable" standard analyzed a version of the AAA Rules that predates the version at issue here. *See, e.g.*, *JPay, Inc. v. Kobel*, 904 F.3d 923, 938 (11th Cir. 2018); *Blanton*, 962 F.3d at 845; *Contec Corp.*, 398 F.3d at 208. The predecessor AAA Rule stated that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or

- 14 -

validity of the arbitration agreement." The United States Court of Appeals for the First Circuit described this language as "about as 'clear and unmistakable' as language can get." *Awuah*, 554 F.3d at 11. The current version of the AAA Rules—the version at issue here—provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*." (Emphasis added.) The current AAA Rule includes the exact language of its predecessor, but specifically adds "or to the arbitrability of any claim or counterclaim." This additional language expressly addresses the arbitrator's power to rule on the arbitrability of any claim. Accordingly, the predecessor language federal circuit courts deemed "clear and unmistakable" gained further clarity with the additional arbitrability language in the current rule.

The Second District's decision in *Natt* arrived at the opposite conclusion based on its determination that "the provision Airbnb relies upon is two steps removed from the agreement itself, hidden within a body of procedural rules, and capable of being read as a permissive direction." 299 So. 3d at 609. The Second District first

- 15 -

criticized that the AAA Rules "were referenced in the clickwrap agreement as a generic body of procedural rules, and that reference was limited to how 'the arbitration' was supposed to be 'administered,' " which the Second District interpreted to mean "an arbitration that is actually commenced." *Id.* at 606. However, the parties do not dispute that the Terms of Service or the AAA Rules are part of the contract, and it is settled law that the parties can incorporate by reference materials, including the AAA Rules, in contracts. Indeed, Airbnb's Terms of Service incorporate by reference more than one dozen extracontractual policies, programs, rules, guides, and other materials. And consistent with our holding above, incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability. Moreover, regarding the "administered" language in the Terms of Service, as explained in Judge Villanti's dissent in *Natt*, the AAA Rules "can only apply at the outset of a claim, not after the arbitration has already commenced." *Id.* at 611 (Villanti, J., dissenting). "The question of whether a claim is arbitrable must, by necessity, be determined

- 16 -

before the commencement of arbitration." *Id.* Otherwise, the AAA Rule delegating arbitrability determinations to an arbitrator would be superfluous.

The Second District also concluded that the AAA Rule "confers an adjudicative power upon the arbitrator, but it does not purport to make that power exclusive." *Id.* at 607. However, as succinctly stated by Judge Villanti's dissenting opinion, "the power to decide *is* the power to decide." *Id.* at 611 (Villanti, J., dissenting). The Supreme Court has explained that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 529. The Supreme Court further stated, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530; *see also Blanton*, 962 F.3d at 849 (explaining why "the AAA Rules are best read to give arbitrators the exclusive authority to decide questions of 'arbitrability' "). The AAA Rules empower the arbitrator "to rule on his or her jurisdiction," the "scope . . . of the arbitration agreement," and "the arbitrability of any claim or

- 17 -

counterclaim." Accordingly, this language is clear and unmistakable and expressly delegates arbitrability determinations to the arbitrator.[5]

### III. CONCLUSION

We hold that, because Airbnb's Terms of Service incorporate by reference the AAA Rules that expressly delegate arbitrability determinations to an arbitrator, the agreement clearly and unmistakably evidences the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitrability. Accordingly, we quash the Second District's decision in *Natt* and approve the Fifth District's decision in *Reunion* and the Third District's decision in *Glasswall* to the extent they are consistent with this opinion. The case is remanded to the district court for further proceedings consistent with this opinion.

It is so ordered.

CANADY, C.J., and LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

---

5. While the Second District's decision below did not reach the question of whether the "clear and unmistakable" analysis should account for the sophistication of the parties, we also conclude that this argument is without merit.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In considering the question of who—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate, the United States Supreme Court, in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995), warned that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Because the arbitrability provisions relied upon by the majority to reach its decision in this case were buried within voluminous pages of rules and policies incorporated only by reference in a clickwrap agreement, the parties' agreement to defer the consequential decision of arbitrability to the arbitrator was anything but clear and unmistakable. I respectfully dissent.

When a non-negotiable, standardized form agreement empowers an arbitrator to resolve the fundamental question of whether a legal matter must be submitted to arbitration, too often the courtroom door closes, and the parties are prevented from seeking any remedy outside of arbitration. We therefore must

- 19 -

"presume that parties have not authorized arbitrators to resolve" this "gateway" question—especially where the agreement is silent or ambiguous on the issue—"because 'doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.' " *Lamps Plus v. Varela*, 139 S. Ct. 1407, 1416-17 (2019) (emphasis omitted) (quoting *First Options*, 514 U.S. at 945).

Airbnb's clickwrap agreement is entirely silent on the question of who determines arbitrability. Instead, the arbitrability provision is buried in the AAA rules, amidst more than 100 pages of policies, rules, and conditions incorporated by reference in the clickwrap agreement. The clickwrap agreement containing Airbnb's Terms of Service, itself a 22-page document, directs consumers to navigate through Airbnb's Payment Terms of Service, Guest Refund Policy, Content Policy, Community Policy, Copyright Policy, Host Guarantee, Privacy Policy, Referral Program Terms and Conditions, and the terms of service of Apple App Store and Google Maps, among others—before even reaching the reference to the AAA rules. Unsuspecting consumers should not be expected to find the proverbial needle in the haystack in order to make a clear and

unmistakable decision about arbitrability—that choice should be conspicuously located in the clickwrap agreement for the consumer to consider.

I fully agree with the analysis of the Second District Court of Appeal in *Doe v. Natt*, 299 So. 3d 599, 606 (Fla. 2d DCA 2020), and its explanation of why the clickwrap agreement lacked clear and unmistakable evidence of the parties' intent to arbitrate the threshold question of arbitrability:

> [A]lthough the circuit court concluded that the AAA Rules had been "incorporated" into the parties' clickwrap agreement for purposes of determining arbitrability (which, the court then determined, precluded its authority to decide arbitrability), the agreement did not actually say that. Indeed, whatever may be gleaned from the AAA Rules . . . those rules were referenced in the clickwrap agreement as a generic body of procedural rules, and that reference was limited to how "the arbitration" was supposed to be "administered." Plainly, the agreement's reference to the AAA Rules and AAA's administration addresses an arbitration that is actually commenced. . . . But if the question were put, "Who should decide if this dispute is even subject to arbitration under this contract?" to respond, "The arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes," is not a very helpful answer and not at all clear.
>
> Moreover, *the reference to the AAA Rules was broad, nonspecific, and cursory:  the clickwrap agreement simply*

*identified the entirety of a body of procedural rules.* The agreement did not quote or specify any particular provision or rule, such as the one Airbnb now relies upon. And the AAA Rules were not attached to the agreement. Instead, the agreement directed the Does to AAA's website and phone number if they wished to learn more about what was in the AAA Rules. *Which strikes us as a rather obscure way of evincing "clear and unmistakable evidence" that the parties intended to preclude a court from deciding an issue that would ordinarily be decided by a court.*

(Emphasis added.) (Footnote omitted.)

Because consumers' access to the courts should be carefully guarded, I cannot agree with the majority's conclusion that Airbnb's mere reference to the AAA Rules is sufficient to notify the parties that they were empowering an arbitrator to answer such a fundamental question. Clearly, the arbitrability provision should have been conspicuously included in the text of the clickwrap agreement itself. Because it was not, under these circumstances, this Court cannot assume that the parties agreed to arbitrate a matter they reasonably would have thought a judge would decide.

For these reasons, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions/Direct Conflict of Decisions

Second District – Case No. 2D19-1383

(Manatee County)

Joel S. Perwin of Joel S. Perwin P.A., Miami Beach, Florida; and Eric J. Simonson of Hinshaw & Culbertson LLP, New Orleans, Louisiana, and Manuel L. Iravedra of Hinshaw & Culbertson LLP, Tampa, Florida,

    for Petitioner

Torri D. Macarages and Thomas J. Seider of Brannock Humphries & Berman, Tampa, Florida; and Damian Mallard of Mallard Law Firm, P.A., Sarasota, Florida,

    for Respondents

Edward M. Mullins and Anabel Blanco of Reed Smith LLP, Miami, Florida; Carlos F. Concepcion and Giovanni Angles of Shook Hardy & Bacon LLP, Miami, Florida; William K. Hill and Steven P. Sukert of Gunster, Miami, Florida; and Harout J. Samra of DLA Piper LLP, Miami, Florida,

    for Amicus Curiae Miami International Arbitration Society

Matthew W.H. Wessler and Linnet R. Davis-Stermitz of Gupta Wessler PLLC, on behalf of American Association for Justice and Public Justice, Washington, District of Columbia, and Jennifer D. Bennett of Gupta Wessler PLLC, on behalf of American Association for Justice and Public Justice, San Francisco, California; and Bryan S. Gowdy of Creed & Gowdy, P.A., on behalf of Florida Justice Association, Jacksonville, Florida,

    for Amici Curiae American Association for Justice, Public Justice, P.C., and the Florida Justice Association

Elliott V. Mitchell and Edward B. Kerr of Campbell Trohn Tamayo & Aranda, P.A., Lakeland, Florida,

for Amici Curiae Professor Henry Allen Blair, Professor Angela Downes, Former Professor Richard D. Faulkner, Professor Clark Freshman, Professor Jill I. Gross, Philip J. Loree, Jr., and Professor Imre Stephen Szalai

Courtney Brewer and Jonathan A. Martin of Bishop & Mills, PLLC, Tallahassee, Florida,

for Amicus Curiae Professor George Bermann